STATE of Wisconsin, Plaintiff-Respondent,

v.

Charles HESS, d/b/a C & C Construction,
Defendant-Appellant.

Court of Appeals

No. 79–1760–CR. Submitted on briefs August 20, 1980.—
Decided September 23, 1980.
(Also reported in 298 N.W.2d 111.)

For the defendant-appellant, the cause was submitted on the briefs of *Frank J. Schiro* and *Salza & Schiro, Ltd.* of Milwaukee.

For the plaintiff-respondent, the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, with whom on the brief was *Thomas J. Balistreri,* assistant attorney general.

Before Decker, C.J., Moser, P.J., and Cannon, J.

CANNON, J. Defendant appeals from a judgment of conviction for theft by contractor contrary to secs. 289.-02(5) [1] and 943.20(1)(b) [2], Stats. On appeal, defend-

---

[1] Sec. 289.02(5), Stats., provides in part:

THEFT BY CONTRACTORS. The proceeds of any mortgage on land paid to any prime contractor or any subcontractor for improvements upon the mortgaged premises, and all moneys paid to any prime contractor or subcontractor by any owner for improvements, constitute a trust fund only in the hands of the prime contractor or subcontractor to the amount of all claims due or to become due or owing from the prime contractor or subcontractor for labor and materials used for the improvements, until all the claims have been paid, and shall not be a trust fund in the hands of any other person. The use of any such moneys by any prime contractor or subcontractor for any other purpose until all claims, except those which are the subject of a bona fide dispute and then only to

ant challenges the sufficiency of the complaint, the sufficiency of the evidence presented at the preliminary examination and at trial, and the adequacy of the jury instructions. We affirm the trial court's determination as to each of these matters.

Defendant and Richard Tubbs (Tubbs) were engaged as general contractors doing business as C & C Construction, Inc. Defendant was primarily responsible for the "field work," and Tubbs was primarily responsible for the "books," although it. appears that this allocation of duties was not exclusive. Neither Tubbs nor the company secretary, Debbie Opitz, could be located for the purpose of testifying at this trial.

Bradley and Kathleen Miller (Millers) negotiated a contract with defendant for the construction of a home whereby defendant was to be the prime contractor. All construction details were negotiated with defendant, al-

---

the extent of the amount actually in dispute, have been paid in full or pro rata in cases of a deficiency, is theft by the prime contractor or subcontractor of moneys so misappropriated and is punishable under s. 943.20.

(Chapter 289 has been renumbered to ch. 779. Ch. 32 Laws of Wis. 1979).

[2] Sec. 943.20(1)(b), Stats., provides in part:

Theft. (1) ACTS. Whoever does any of the following may be penalized as provided in sub. (3) :

. . . .

(b) By virtue of his office, business or employment, or as trustee or bailee, having possession or custody of money or of a negotiable security, instrument, paper or other negotiable writing of another, intentionally uses, transfers, conceals, or retains possession of such money, security, instrument, paper or writing without the owner's consent, contrary to his authority, and with intent to convert to his own use or to the use of any other person except the owner. A refusal to deliver any money or a negotiable security, instrument, paper or other negotiable writing, which is in his possession or custody by virtue of his office, business or employment, or as trustee or bailee, upon demand of the person entitled to receive it, or as required by law, is prima facie evidence of an intent to convert to his own use within the meaning of this paragraph.

though only Tubbs was present when the contract was signed. A construction mortgage for $64,000 was arranged through Hopkins Savings and Loan (Hopkins). Pursuant to this mortgage, an escrow fund was established to be used to reimburse the prime contractor and subcontractors for work completed. In order to draw on the escrow fund, defendant had to submit a statement breaking down the expenses for which reimbursement was sought, lien waivers[3] from each subcontractor, and an authorization from the homeowners to release the funds. Hopkins was also required to inspect the property to see that the work was completed prior to releasing the funds. At no time was permission given by either the homeowners or Hopkins to use the funds released for purposes other than those stated on the breakdown statement.

Three draws[4] totaling $36,623 were made by defendant on the escrow fund. All checks were negotiated. The first draw was made July 15, 1977 for $21,095. Of this amount $3,400 was stated on the breakdown sheet to be paid to Ver Halen, Inc. (Ver Halen) for the installation of windows. Ver Halen billed defendant for the actual installation cost, $3,130.40, however, no payment was ever made. The second draw was made October 7, 1977 for $7,700.[5] Of this amount $1,500 was to be used to pay the roofing subcontractor, Specialty Associates (Specialty). Defendant was billed $1,162 on November 18, 1977, although no payment was ever made to the roofing subcontractor. The third draw was made November 21, 1977 for $7,828.[6] Of this amount $2,315 was to be paid

---

[3] The lien waivers indicated that the work had been completed and that the party signing had been paid.

[4] One additional draw was made during this same period by the homeowners on October 21, 1977, for $1,800.

[5] This draw took the form of two checks for $3,200 and $4,500 each.

[6] Although a stop payment was issued on this check, these funds were eventually released to defendant.

to Mequon Heating and Sheet Metal (Mequon) for the installation of the heating system. In each case lien waivers and authorizations were submitted. No payment was ever received by Ver Halen, Specialty or Mequon.

When payment was not forthcoming from defendant the subcontractors contacted the Millers. The Millers in turn contacted the defendant who assured them that payment would be made. When payment was not made, the Millers contacted Hopkins and authorized it to stop payment to the defendant. Defendant stopped construction, and construction was completed by another contractor.

A criminal complaint was filed against defendant February 2, 1979. At a preliminary hearing held February 8, 1979, defendant was bound over for trial. Trial was held October 15–17, 1979, at the conclusion of which the jury returned a verdict convicting him of the theft by contractor. Judgment was entered on the conviction and the sentence on October 17, 1979. Notice of appeal was filed November 14, 1979.

Defendant raises the following contentions on appeal:

1. That the complaint is defective in failing to allege that defendant retained funds contrary to his authority as trustee;

2. That insufficient evidence was adduced at the preliminary examination to furnish probable cause that defendant had retained the funds contrary to his authority and with the requisite intent required to support the charge;

3. That the trial court erred in failing to give defendant's requested jury instructions and his theory of defense; and

4. That insufficient evidence was adduced at trial to establish that defendant acted contrary to his authority, and that defendant acted with the requisite intent to support a conviction for theft by contractor.

We find these contentions to be without merit and affirm.

## ELEMENTS OF THE OFFENSE

At the outset, we find it necessary to set forth the elements necessary for a conviction under secs. 289.02 (5) and 943.20(1)(b), Stats: (1) the defendant acted as a prime contractor; (2) the defendant received money for the improvement of land from the owner or a mortgagee; (3) the defendant intentionally used the money for purposes other than the payment of bona fide claims for labor or materials prior to the payment of such claims; (4) the use was without the owner or mortgagee's consent, and contrary to the defendant's authority; (5) the defendant knew the use was without consent and contrary to his authority; and (6) the defendant used the money with the intent to convert it to his own use or the use of another.

The only difference between a civil and a criminal action for theft by contractor is that for a criminal conviction the state has an additional burden of proving that defendant acted with wrongful intent beyond a reasonable doubt. *State v. Wolter,* 85 Wis.2d 353, 362, 270 N.W.2d 230, 235 (Ct. App. 1978).

Defendant argues that proof of a mere wrongful intent is insufficient, but rather an intent to defraud must be proven. In support of this position defendant cites *State v. Blaisdell,* 85 Wis.2d 172, 270 N.W.2d 69 (1978) wherein the court states that in a criminal case "the state must prove intent to defraud beyond a reasonable doubt." *Id.* at 179, 270 N.W.2d at 73. We find the distinction urged by defendant would only serve to obfuscate the court's purpose. The court was merely attempting to elucidate that some additional element of culpability, whether it be denominated as wrongful, criminal, fraudu-

lent, felonious, or wrongfully fraudulent, must be shown to sustain a criminal conviction for theft by contractor. All of these terms are used by our supreme court and this court to delineate the type of intent which distinguishes a criminal from a civil action. *See, e.g., State v. Wolter, supra,* at 362, 371, 270 N.W.2d at 235, 239; *Burmeister Woodwork Co. v. Friedel,* 65 Wis.2d 293, 301–02, 222 N.W.2d 647, 651–52 (1974). From this looseness of language, we conclude that proof of an "intent to defraud" in an action for theft by contractor requires no more than the production of sufficient probative evidence to establish criminal intent. It is further evident that this elusive element may be inferred from the defendant's conduct. *State v. Blaisdell, supra,* at 179, 270 N.W.2d at 73. The court in *Blaisdell* states:

"[I]ntent is a state of mind which can be evidenced only by words or conduct of the person who is claimed to have entertained it. The jury was under no obligation to accept the direct evidence of intent furnished by the defendant, and must be permitted to infer intent from such of the defendant's actions as objectively evidence his state of mind." *Id.* at 180, 270 N.W.2d at 74. [quoting *State v. Kuenzli,* 208 Wis. 340, 347, 242 N.W. 147, 149 (1932).]

### SUFFICIENCY OF THE COMPLAINT

Defendant contends that the complaint is defective in failing to set forth facts sufficient to establish that defendant acted contrary to his authority. We do not agree.

■

The standard for testing the sufficiency of a complaint has been recently set forth in *State v. White,* 97 Wis.2d 193, 295 N.W.2d 346 (1980):

The criminal complaint must answer the following five questions before it will be deemed to state probable cause:

(1) Who is charged?; (2) What is the person charged with?; (3) When and where did the alleged offense take place?; (4) Why is this particular person being charged?; and (5) Who says so? or How reliable is the informant? *Id.* at 203, 295 N.W.2d at 350.

A complaint is sufficient if it states sufficient facts which, when taken together with the reasonable inferences arising therefrom, constitute probable cause. *Lofton v. State,* 83 Wis.2d 472, 478, 266 N.W.2d 576, 578 (1978).

Applying these standards to the complaint herein we find it contains sufficient facts to constitute probable cause. First, Charles Hess (Hess) is identified as the person charged. Second, the complaint contains both a statutory reference to secs. 289.02(5) and 943.20(1)(b), Stats., as well as a statement describing the nature of the charge, theft by contractor. Third, the complaint sets forth pertinent details regarding the construction contract, the mortgage, the amounts and dates of the draws, the purpose of the draws, their negotiation, the nonpayment of certain contractors, and that this was without the owners' consent. Fourth, the complaint indicates that defendant is charged because he negotiated the construction contract, payment was made to him as a result of the negotiation of the draws, and despite requests made to him personally by the Millers the subcontractors were not paid. Fifth, Kathleen Miller is listed as the complainant. We hold that a magistrate presented with these facts could reasonably conclude that the funds were retained contrary to defendant's authority as general contractor. No error was committed in denying defendant's motion to challenge the sufficiency of the complaint.

## PRELIMINARY EXAMINATION

Defendant also argues that insufficient evidence was produced at the preliminary examination to establish that defendant acted contrary to his authority or with the intent to defraud or convert the trust funds. We do not agree.

The distinction to be drawn between trial court and appellate court functions in evaluating the evidence at the preliminary examination has been set forth in *State v. Sirisun,* 90 Wis.2d 58, 279 N.W.2d 484 (Ct. App. 1979):

At the trial level:

A defendant may be bound over for trial when the evidence at the preliminary hearing is sufficient to establish probable cause that a crime has been committed and that the defendant probably committed it.

The probable cause that is required for a bindover is greater than that required for the issuance of an arrest warrant, but guilt beyond a reasonable doubt need not be proven. [Citation omitted.]

The appellate court operates under a different standard on appeal.

"The reviewing court can examine the evidence only sufficiently to discover whether there was any substantial ground for the exercise of judgment by the committing magistrate. When the reviewing court has discovered that there is competent evidence for the judicial mind of the examining magistrate to act on in determining the existence of the essential facts, it has reached the limit of its jurisdiction and cannot go beyond that and weigh the evidence." [Citations omitted.] *Id.* at 61–62, 279 N.W.2d at 485.

At the preliminary examination here, an officer from Hopkins testified to the establishment of the escrow fund, the documentation which had to be submitted to draw upon that fund, the significance of the breakdown

statement and lien waivers, the issuance and subsequent negotiation of the checks to defendant, and the relationship between the general contractor and subcontractor with respect to payment. An officer from Ver Halen offered testimony regarding the installation of the windows, the execution of the lien waiver, the specifics regarding the billings[7] sent to the defendant, the nonpayment by the defendant, and the attempts made at soliciting payment from the contractor. Mrs. Miller also testified to the installation of the windows. She further testified that it was not until October, 1977, when she was contacted by Ver Halen, that she became aware that Ver Halen was not paid. When she contacted defendant in November, 1977, he assured her that the check to Ver Halen was sitting on his desk. No payment was made. Mrs. Miller also testified that at no time was consent given to use the funds for purposes other than those stated on the breakdown statement. Defendant did not testify at the preliminary examination.

We hold that from the evidence supplied, the magistrate could reasonably conclude that the defendant had retained the funds contrary to his authority with the requisite criminal intent to convert them to his own use. We find no error in binding the defendant over for trial.

## JURY INSTRUCTIONS

Defendant additionally urges us to find error in the trial court's failure to give defendant's proposed jury instructions. Defendant submitted four sets of proposed jury instructions which included instructions on the substantive theory of the law as well as his theory of de-

---

[7] Ver Halen submitted to defendant both an invoice on September 22, 1977, as well as a statement on June 20, 1978.

fense. The trial court rejected these, and chose instead to read Wis J I—Criminal 1443 plus an additional statement on intent and a summarization of defendant's theory of defense. We conclude that these instructions adequately state the law and defendant's theory of defense.

This court has recently reiterated the standard for reviewing the trial court's refusal to give requested jury instructions:

"A trial court has wide discretion as to instructions. If the instructions of the court adequately cover the law applicable to the facts, this court will not find error in the refusal of special instructions even though the refused instructions themselves would not be erroneous." [Citations omitted.] *State v. Pruitt*, 95 Wis.2d 69, 80–81, 289 N.W.2d 343, 348 (Ct. App. 1980).

We have reviewed Wis J I—Criminal 1443 and determine that it correctly states and explains the elements of theft by contractor. In addition to the standard instruction the court added the following instruction regarding the requisite intent:

Wrongful intent is an essential element the State must prove beyond a reasonable doubt before you may find the defendant guilty as charged. In this case, the jury must be satisfied beyond a reasonable doubt:
One, that the defendant knew the money was withdrawn from the trust account upon the representation that it be paid to a subcontractor or material man;
Two, that the defendant knew that such funds were not paid to the subcontractor or material man;
Three, that he knew such funds were being transferred, concealed or retained without the owner's consent.

This instruction sufficiently conveys to the jury the additional element of intent that is required for a criminal conviction as opposed to liability in a civil suit. We find

that this instruction, taken together with the standard instruction, adequately informs the jury of the substance of the crime charged. Defendant's requested instruction, although not totally inaccurate, would only serve to mislead the jury as to the requisite intent for conviction.

Defendant also challenges the trial court's failure to give either of his defense theory instructions. Although defense theory instructions are a matter of right, this court has recognized that only a recital of the legal theory, as opposed to the evidentiary facts offered in support of that theory, may properly be offered to the jury. *State v. Pruitt, supra,* at 81, 289 N.W.2d at 348.

Here, the trial court gave the following defense theory instruction:

It is the theory of the defense that the defendant did not know that draws were being made, nor did he know that the subcontractors were to be paid from such draws, who were not in fact paid, and [because] the defendant did not know funds were withdrawn from the trust account or the defendant did not know such funds when withdrawn from the account were not paid to the materialmen or subcontractors specified in the draw, then he could not form the wrongful intent necessary to convict him, and the jury should find him not guilty.

We have reviewed the defense theory instructions proposed by the defendant and determine that those instructions merely highlighted the evidentiary facts supporting the defendant's knowing and intentional participation in the alleged theft. We accordingly conclude that the trial court committed no error in rejecting the instructions and affirm.

## SUFFICIENCY OF THE EVIDENCE AT TRIAL

Finally, defendant challenges the sufficiency of evidence presented at trial. Specifically, defendant con-

tends that insufficient evidence was presented to establish that defendant acted with intent to defraud and contrary to his authority.

The standard for reviewing a challenge to the sufficiency of the evidence is stated in *State v. Blaisdell, supra,* at 180–81, 270 N.W.2d at 74:

> When the defendant challenges the sufficiency of the evidence, the test is whether the evidence adduced, believed, and rationally considered by the jury was sufficient to prove the defendant's guilt beyond a reasonable doubt. [Citation omitted.] Conversely stated, the test is whether when considered most favorably to the state and the conviction, the evidence is so insufficient in probative value and force that it can be said as a matter of law that no trier of facts acting reasonably could be convinced to that degree of certitude which the law defines as "beyond a reasonable doubt." [Citation omitted.] Furthermore, it is not necessary that this court be convinced of the defendant's guilt but only that the court is satisfied the jury acting reasonably could be so convinced. [Citations omitted.]

After reviewing the trial record, we conclude that the evidence is not so insufficient as a matter of law that a jury could not reasonably conclude that the defendant was guilty beyond a reasonable doubt. It is not disputed that defendant, as prime contractor, received the three draws described earlier, totaling $36,623, from the escrow fund, and that these draws were knowingly and intentionally made for the purpose of paying certain itemized construction costs, including payments to Ver Halen, Specialty, and Mequon. As recipient of these funds he became trustee for these subcontractors. Evidence was further adduced that payment was not made to any of these three subcontractors despite the receipt of billings[8]

---

[8] In addition to the Ver Halen billings described in note 7 *supra,* a bill was submitted November 18, 1977 from Mequon for $2,315. The parties further stipulated to the receipt of a billing from Specialty dated November 18, 1977 for $1,162.

from each subcontractor and verbal requests from the homeowners for payment. In response to the request of Mrs. Miller regarding the Ver Halen billing he expressly promised to pay. The evidence also establishes that defendant was without authority to use these funds for purposes other than those stated. Defendant also testified that the order of payment to the subcontractors was determined by "whoever was screaming the loudest."

We hold that from this evidence the jury could reasonably infer that defendant intentionally retained and used the funds entrusted to defendant as prime contractor for the payment of Ver Halen, Specialty, and Mequon. The jury could further conclude that this retention was knowingly made contrary to his authority as general contractor, with the intent to convert the funds to his own use. Defendant contends that as he never refused to pay these subcontractors he did not act with the requisite wrongful intent to sustain a conviction. We do not agree that such an express refusal to pay is necessary. The jury could reasonably infer from the repeated requests for payment and defendant's failure to follow through on his promises to pay, that the payment was not only intentionally, but wrongfully withheld. Accordingly, we hold that defendant's conviction must be affirmed.

*By the Court.*—Judgment affirmed.