Tri-Tech Corporation of America, Plaintiff-Respondent,

v.

Americomp Services, Inc., Defendant,

James Schmidt, Defendant-Appellant.†

Court of Appeals

*No. 00–3195. Submitted on briefs May 23, 2001.—Decided July 18, 2001.*

2001 WI App 191

(Also reported in 633 N.W.2d 683.)

† Petition to review granted 10-23-01.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Dayten P. Hanson* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Robert J. Welcenbach* and *Michael J. Widmann* of *Welcenbach & Widmann* of Milwaukee

Before Brown, P.J., Anderson and Snyder, JJ.

¶ 1. BROWN, P.J. This case concerns the imposition of treble damages plus the litigation costs for contractor theft based on a recent statute, Wɪs. Sᴛᴀᴛ. § 895.80 (1999–2000).[1] The most noteworthy issue, which we get to last, is whether violation of the contractor theft statute, Wɪs. Sᴛᴀᴛ. § 943.20(1)(b), automatically means that the victim gets treble damages and attorney's fees upon proof that the statute was violated. We answer that question no. The plaintiff

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

must initially prove that the contractor theft was accomplished with criminal intent pursuant to § 943.20(1)(b). But we nonetheless affirm treble damages because the summary judgment record supports it. We also hold that the installation of computer cabling in an office building is an "improvement" of that building under the contractor theft statute. There are other issues also raised that we will briefly touch upon.

¶ 2. We set forth a rather detailed account of the procedural history of this case because its recitation will help present the major issue in this case, as well as a preliminary issue in this case, which we hold to be waived.

¶ 3. This action began with a complaint, filed on March 7, 2000, by Tri-Tech Corporation of America against Americomp Services, Inc., and its owner and sole shareholder, James Schmidt. Americomp had entered into an arrangement with a third party, The Frantz Group, to perform computer networking installation. It hired Tri-Tech to lay the cable in the building in which The Frantz Group was housed. The cable was laid, the networking services were performed and The Frantz Group paid Americomp for this work. Tri-Tech submitted an invoice in the amount of $27,807.95.

¶ 4. Despite numerous demands, Americomp did not pay the bill. Tri-Tech alleged that any moneys paid by The Frantz Group to the defendants constituted a trust fund pursuant to Wis. Stat. § 779.02(5). Tri-Tech further alleged that the defendants were under an obligation to use funds received from The Frantz Group to pay Tri-Tech. Tri-Tech complained that failure to pay was a violation, therefore, of the theft by contractor statute for which Schmidt was personally liable. In addition, Tri-Tech alleged that the failure to pay the claim amounted to a misappropriation of trust funds

and that based on the misappropriation, Tri-Tech was entitled to treble damages and costs and attorney's fees under Wis. Stat. §§ 895.80 and 943.20.

¶ 5. Americomp and Schmidt answered, admitting that Tri-Tech provided the work in the sum alleged, that The Frantz Group paid Americomp for that work and that Americomp had not paid Tri-Tech. They further admitted that Americomp had received an invoice, had also received numerous statements on the account from Tri-Tech and had not objected to them.

¶ 6. Thereafter, Tri-Tech moved for summary judgment, filed on May 18, providing an affidavit and a brief in support. This motion was made only against Americomp, not Schmidt. This motion asserted, inter alia, that Americomp was the prime contractor for The Frantz Group and that Wis. Stat. § 779.02(5) required it to hold all moneys paid to it in trust for the benefit of all subcontractors whose claims were due. Tri-Tech contended that Americomp was under obligation to hold these moneys for Tri-Tech and the failure to do so was a breach of its fiduciary duty. The motion was scheduled to be heard on June 19.

¶ 7. On June 6, Americomp filed an amended answer alleging that a set-off of $5700.71 was due for work performed by Americomp for Tri-Tech on another project, for which Americomp had not yet been paid. Tri-Tech denied that this amount was due and owing on June 16.

¶ 8. On June 16, Americomp, and not Schmidt, served by mail a brief in opposition to summary judgment. The brief argued, inter alia, that summary judgment against Americomp on the theft by contractor theory was inappropriate because Tri-Tech had to prove that The Frantz Group was the "owner" of the property upon which the improvements were made. Americomp

contended that there was no evidentiary support in the summary judgment motion for that to be the case.

¶ 9. The summary judgment motion was heard by the court and the parties apparently stipulated to the court rendering judgment for Tri-Tech for $27,807.95 less a set-off of $5700.71. The judgment also stated that all causes of action against Schmidt, personally, were preserved.

¶ 10. Then on July 28, Tri-Tech filed a motion for summary judgment against Schmidt. As it did with Americomp, Tri-Tech argued in its brief that Americomp's actions amounted to theft by contractor. But Tri-Tech went further and pointed out that Wis. Stat. § 779.02(5) makes the officers and directors of the corporation personally liable. In addition, Tri-Tech contended that the use of such trust funds is considered a misappropriation punishable under the theft statute, Wis. Stat. § 943.20. Tri-Tech theorized that since Wis. Stat. § 895.80 provides for treble damages plus attorney's fees and costs to anyone who suffers a loss based on § 943.20, Schmidt was liable for treble damages.

¶ 11. The record does not contain any proof that a counteraffidavit or brief in opposition to this motion was filed before the hearing date, September 18. At the hearing, however, Schmidt had two basic points to make in opposition. First, that the installation of cable was not an "improvement" to the building and second, that the treble damages statute does not list the contractor theft statute as an underlying claim for which treble damages may be awarded. The trial court disagreed with Schmidt and ordered judgment of treble damages against him personally, plus attorney's fees

and costs. This is Schmidt's appeal from that judgment. The judgment against Americomp is not being appealed.

## 1. EFFECT OF FAILURE TO TIMELY SUBMIT SPECIFIC EVIDENTIARY MATERIALS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT.

¶ 12. With the procedural status at hand, we can easily answer Schmidt's first issue. He claims that neither Tri-Tech's pleadings nor its affidavit in support of summary judgment presents proof that The Frantz Group was an owner. This is important, claims Schmidt, because of the language contained in the first sentence of the theft by contractor statute. WISCONSIN STAT. § 779.02(5) says, in pertinent part:

> **(5)** THEFT BY CONTRACTORS. The proceeds of . . . all moneys paid to any prime contractor or subcontractor by *any owner* for improvements, constitute a trust fund . . . . (Emphasis added.)

Schmidt reads the above to mean that only if the claimant proves that the moneys were paid by an "owner" does the statute become capable of enforcement.

██

¶ 13. But Schmidt's problem is that he did not follow the statute in opposing the motion for summary judgment. WISCONSIN STAT. § 802.08(2) specifically requires that the adverse party shall serve opposing affidavits, if any, at least five days before the time fixed for the hearing. Here, Tri-Tech's pleading asserted that its installation of cabling occurred at a property owned by The Frantz Group. Supporting papers to the summary judgment motion made the same allegation. No

opposing papers were presented by Schmidt. Thus, the factual issue of whether The Frantz Group was an owner was simply not disputed. Moreover, at the summary judgment hearing itself, Schmidt never raised the issue of whether The Frantz Group was an owner. The issue is thus raised for the first time on appeal and is waived.

¶ 14. Schmidt attempts to get around these problems by pointing out that he did present an affidavit contesting that The Frantz Group was an owner, albeit in response to the motion for summary judgment against Americomp, not in response to the motion for summary judgment against him. That will not suffice. The first motion for summary judgment was only against Americomp. Schmidt has offered no authority for the proposition that he can use the affidavit he filed opposing summary judgment against Americomp in the action later taken against him. Schmidt's first issue fails.

## 2. WHETHER THE INSTALLATION OF COMPUTER CABLING IN A BUILDING CONSTITUTES AN "IMPROVEMENT" FOR PURPOSES OF THE THEFT BY CONTRACTOR STATUTE.

¶ 15. Despite the fact that no supporting materials in opposition to the motion for summary judgment were submitted by Schmidt, that failure only affects the question of whether there are disputed issues of fact making summary judgment inappropriate. The failure to submit opposing materials does not affect whether a party moving for summary judgment is entitled to judgment as a matter of law. Schmidt's next issue is one of law, although, curiously, he labels it as a question of fact which he contends was disputed by the materials produced before the trial court at the summary judg-

ment hearing. If indeed the issue were a question of fact, he would be out of court for the same reasons that his first issue, discussed above, fails.[2] But the issue is whether cable installation constitutes an improvement under the statute. Therefore, the issue is one of applying undisputed facts to the law, which is an issue of law. *State v. Williams*, 104 Wis. 2d 15, 21–22, 310 N.W.2d 601 (1981). We move to the merits.

¶ 16. Schmidt contends that the word "improvements" as it exists in the theft by contractor statute, is a term of legal art with a specific meaning in mind. He

---

[2] Schmidt also claims that there is a "disputed issue of fact" as to whether Tri-Tech's agreement with Americomp is one that falls within the scope of the construction lien statute set forth in Wis. Stat. § 779.02(5). Schmidt is apparently of the belief that recovery under the contractor theft statute requires, as a condition precedent, that the underlying contract was a "construction contract." He seems to argue that because there is no evidence that Tri-Tech filed lien notices or a construction lien, the underlying contract was not subject to the Construction Lien Law. This issue appears to us to be a question of law rather than fact. It asks whether, as a matter of law, construction liens and notices are a necessary condition precedent to a cause of action under the theft by contractor statute. Nevertheless, no matter how ill-framed the issue is, it is meritless for the answer has already been established by recent case law. In *Wisconsin Dairies Coop. v. Citizens Bank & Trust*, 160 Wis. 2d 758, 770, 467 N.W.2d 124 (1991), our supreme court held as follows:

> [N]either the language of sec. 779.02(5), Stats., the legislative history, the policies behind the statute, nor our prior decisions support a conclusion that the legislature intended to terminate the trust fund if the subcontractor failed to preserve its lien rights. To the contrary, these factors demonstrate that the legislature intended to provide two independent and alternative remedies for protecting subcontractors—the construction lien provisions, *see, e.g.,* sec. 779.01(3), and the trust fund statute.

325

points out that the statute defines an "improvement" as something "made or done on or to the land for its permanent benefit." WIS. STAT. § 779.01(2)(a). He insists that the computer cabling does not meet this definition. He claims that computer cabling is not "permanent" because it is capable of being removed and is therefore not an improvement.

¶ 17. We do not agree. Schmidt was hired to do computer networking. In the culture of the new technology, this is a term with a definite meaning. It means "two or more computers that are connected with one another for the purpose of communicating data electronically." ENCYCLOPEDIA BRITANNICA, *Computer Network, available at* http://www.britannica.com. "Two basic network types are local-area networks (LANs) and wide-area (or long-haul) networks. LANs connect computers and peripheral devices in a limited physical area, such as a business office . . . by means of permanent links (wires, cables, fibre optics) that transmit data rapidly." *Id.* "Wide-area networks connect computers and smaller networks to larger networks over greater geographic areas, including different continents. They may link the computers by means of cables . . . but their users commonly access the networks via modem . . . . The largest wide-area network is the internet." *Id.*

¶ 18. Whether Tri-Tech was hired by Schmidt to provide links for a LANs network, which was probably the case, or a wide-area network is not important. What is important is that Tri-Tech was hired to provide the links and these links are laid in a manner similar to other forms of wiring that are commonly put into a building and which are considered by the courts to be permanent benefits. In fact, Schmidt stipulated before the trial court that when a building's infrastructure is

laid with cable whose purpose is to connect two or more computers or peripheral devices, it becomes a benefit to the building just as the wiring for electricity, phone or intercom. It is obvious why Schmidt stipulated to this fact. A cable wiring plan requires the same long runs, the same gradual versus steep curves, the same stapling and splicing concerns as electrical wiring. *Steve DeRose's guide to CAT5 computer network wiring* (August 5, 2000), *available at* http://www.stg.brown.edu/~sjd/wiring/CAT5-wiring.html. We conclude that such wiring provides a benefit to the building that was not there before. The building is now wired for networking where it was not so wired before.

¶ 19. While Schmidt admits that the wiring benefits the building in a manner that was not present before, he objects to the characterization that it is a "permanent" improvement, like electrical wiring, which is required by the statute. Schmidt theorizes that "rapid changes" in the computer industry will eventually require that the cable either be removed or that it will be rendered obsolete. He therefore asserts that one cannot say that the benefit to the building will be "permanent." It may turn out that his vision is correct. But that is all it is right now—a vision. And we could make the same speculative assumption with regard to electrical wiring and telephone wiring and just about everything else that we now consider to be permanent additions to a building. All may become obsolete someday. But we must deal with reality as it now exists. And for now, the cable provides a permanent benefit.

### 3. WHETHER SCHMIDT IS LIABLE FOR TREBLE DAMAGES.

¶ 20. WISCONSIN STAT. ch. 943 pertains to crimes against property. The common law has always allowed

persons whose property has been intentionally damaged or misappropriated to sue the perpetrator for damages in a civil action. However, in cases involving intentional torts, the supreme court adopted and applied the middle burden of proof in which the victim had to prove his or her case by clear and convincing evidence. *Kuehn v. Kuehn*, 11 Wis. 2d 15, 26–30, 104 N.W.2d 138 (1960).

¶ 21. The legislature, in an obvious policy choice, decided to create a new cause of action for victims of certain crimes against property, one in which the lower burden of proof—preponderance of the evidence—would be utilized. In another departure from common law, the legislature also decided that if the victims of these crimes against property prevailed in this new cause of action, they could recover treble damages plus the costs of investigation and litigation reasonably incurred. This relatively new statute, WIS. STAT. § 895.80, states in pertinent part:

> **895.80 Property damage or loss. (1)** Any person who suffers damage or loss by reason of intentional conduct that occurs on or after November 1, 1995, and that is prohibited under s. 943.01, 943.20, 943.21, 943.24, 943.26, 943.34, 943.395, 943.41, 943.50 or 943.61 . . . has a cause of action against the person who caused the damage or loss.
>
> **(2)** The burden of proof . . . is . . . by a preponderance of the credible evidence.
>
> **(3)** If the plaintiff prevails in a civil action . . . he or she may recover all of the following:
>
> (a) Treble damages.
>
> (b) All costs of investigation and litigation that were reasonably incurred.

(4) A person may bring a civil action . . . regardless of whether there has been a criminal action . . . .

■■

¶ 22. As we stated above, Tri-Tech's suit against Schmidt invoked this statute and the trial court's summary judgment awarded treble damages plus litigation costs. Schmidt argues that the award was inappropriate for two reasons. First, Schmidt argues that the legislature only meant to expose certain types of wrongdoers to treble damages and those wrongdoers consist of persons who violate the specific statutes listed in WIS. STAT. § 895.80(1). Schmidt argues that the doctrine of *expressio unis est exclusio alterius* is an apt maxim to use here. Under this doctrine, when a statute makes reference to a list of specific alternatives in a statute, it evidences the legislature's intent to exclude alternatives that have not been listed. *See C.A.K. v. State*, 154 Wis. 2d 612, 621, 453 N.W.2d 897 (1990). Schmidt asserts that the absence of WIS. STAT. § 779.02(5) from the list of statutes found in § 895.80(1) is proof that the legislature did not intend for victims of contractor theft to receive the benefits of the statute.

¶ 23. Tri-Tech counters that because WIS. STAT. § 779.02(5) specifically mentions how failure to hold moneys in trust for the benefit of subcontractors is "punishable under s. 943.20," the failure is ipso facto theft. Although WIS. STAT. § 895.80(1) does not enumerate § 779.02(5), it does enumerate WIS. STAT. § 943.20. Since a violation of § 779.02(5) is also a violation of § 943.20, Tri-Tech reasons that the mere failure to hold moneys in trust automatically comes under the purview of § 895.80(1).

¶ 24. Whether Wɪs. Sᴛᴀᴛ. § 895.80(1) encompasses Wɪs. Sᴛᴀᴛ. § 779.02(5) via Wɪs. Sᴛᴀᴛ. § 943.20 involves statutory construction and is a question of law that we review de novo. *Morris v. Juneau County*, 219 Wis. 2d 543, 550, 579 N.W.2d 690 (1998). In deciding which party is correct in its interpretation, it is appropriate at this juncture to cite both Wɪs. Sᴛᴀᴛ. §§ 943.20 and 779.02(5) in their pertinent parts:

> **943.20 Theft**. **(1)** Aᴄᴛs. Whoever does any of the following may be penalized as provided in sub. (3):
>
> . . . .
>
> (b) By virtue of his or her office, business or employment, or as trustee . . . having possession or custody of money . . . *intentionally* uses, transfers, conceals, or retains possession of such money . . . without the owner's consent, contrary to his or her authority, and *with intent to convert to his or her own use or to the use of any other person except the owner.* A refusal to deliver any money . . . which is in his or her possession or custody by virtue of his or her office, business or employment, or as trustee . . . upon demand of the person entitled to receive it, or as required by law, *is prima facie evidence of an intent to convert to his or her own use within the meaning of this paragraph.* (Emphasis added.)

The contractor theft statute, Wɪs. Sᴛᴀᴛ. § 779.02(5) says in pertinent part:

> **(5)** Tʜᴇғᴛ Bʏ Cᴏɴᴛʀᴀᴄᴛᴏʀs. [A]ll moneys paid to any prime contractor or subcontractor by any owner for improvements, *constitute a trust fund* only in the hands of the prime contractor or subcontractor to the amount of all claims due or to become due or owing from the prime contractor or subcontractor for labor and materials used for the improvements, until all the claims

330

have been paid, and shall not be a trust fund in the hands of any other person. The use of such moneys by any prime contractor or subcontractor for any other purpose until all claims, except those which are the subject of a bona fide dispute . . . have been paid in full or proportionally in cases of a deficiency, is theft by the prime contractor or subcontractor of moneys so misappropriated and is *punishable under* s. 943.20. If the prime contractor or subcontractor is a corporation, such misappropriation also shall be deemed theft by any officers, directors or agents of the corporation responsible for the misappropriation. (Emphasis added.)

¶ 25. The former statute, WIS. STAT. § 943.20, is a criminal statute creating the crime of theft by contractor punishable under the provisions of that statute. *See State v. Wolter*, 85 Wis. 2d 353, 362, 270 N.W.2d 230 (Ct. App. 1978). Section 943.20 is the criminal action while the latter statute, WIS. STAT. § 779.02(5), is the action creating civil liability. *See id.* Case law informs us that the only difference between a civil and criminal action for theft by contractor is that the criminal conviction has an additional burden of proving criminal intent to defraud. *See State v. Blaisdell*, 85 Wis. 2d 172, 179, 270 N.W.2d 69 (1978).

¶ 26. Tri-Tech claims that *Blaisdell*, a supreme court case, was overruled by two later court of appeals cases, *State v. Hess*, 99 Wis. 2d 22, 298 N.W.2d 111 (Ct. App. 1980), and *Wolter*. That cannot be so. This court has no authority to overrule the supreme court. *Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997). And neither *Hess* nor *Wolter* can be read to have diluted or narrowed the holding of *Blaisdell*. Rather, the cases followed and explained *Blaisdell*.

¶ 27. We hold that there is a difference between criminal and civil theft by contractor. The difference is that the criminal statute requires wrongful intent and the civil statute does not. Therefore, it is incorrect to say that a violation of WIS. STAT. § 779.02(5) is ipso facto a violation of WIS. STAT. § 943.20. While failure to hold moneys in trust is *punishable* under § 943.20, it does not mean that the mere failure to pay moneys out of the trust fund is automatically subject to criminal action. We agree, therefore, with Schmidt to a certain extent. Violation of the contractor theft statute, standing alone, does not mean that treble damages are automatically available to the victim.

¶ 28. A review of the types of crimes the legislature thought were deserving of a separate claim for treble damages enforces our belief that the intent of the legislature was to provide a cause of action to those who were victims of "criminal" conduct causing "property damage or loss." Those victims covered under the treble damages statute include the following: persons who were victims of intentional damage to property, fraud upon a hotel keeper, issuance of a worthless check, removal or damage to encumbered property, receiving or concealing stolen property, fraudulent insurance or employee benefits claims, credit card fraud, shoplifting and theft of library materials. *See* WIS. STAT. § 895.80(1). In each of these instances, a criminal conviction would require a state of mind on the part of the perpetrator commensurate with criminal intent to do the act. The statute speaks to violation of WIS. STAT. § 943.20. It does not speak to violation of WIS. STAT. § 779.02(5). Schmidt's interpretation of the statute in that regard is correct.

■

¶ 29. Our holding here does not, however, relieve Schmidt from exposure to treble damages. Having decided that criminal intent is a necessary precondition to victim compensation under the treble damages section, Schmidt maintains that this means criminal intent which is proven beyond a reasonable doubt. That is incorrect. The treble damages statute expressly states that the victim need only prove criminal intent to a preponderance of the evidence. Moreover, under the plain wording of the statute, there need not be a criminal action resulting in a conviction as a precondition to a suit for treble damages. Therefore, the victim pursuing treble damages must prove criminal intent, but only to a preponderance of the evidence.

¶ 30. There is also a question about what is meant by the term "criminal intent" for purposes of contractor theft. Schmidt maintains that, under *Blaisdell*, there must be a showing that he intended to defraud Tri-Tech and since there is no evidence that he had this evil purpose in mind, the treble damages statute may not be applied.

¶ 31. Schmidt's argument requires a close look at what the *Blaisdell* court meant by criminal intent to defraud. In *Blaisdell*, the defendants Blaisdell and Utech, doing business as electrical contractors, argued that criminal theft by contractor differed from civil theft by contractor in that, in a criminal matter, the State had to prove that it was their design never to pay their supplier from the funds received. *Blaisdell*, 85 Wis. 2d at 177. This, they thought, was different from the civil action where all that needed to be proven was that, for one reason or another, the supplier was not paid from the funds held in trust. *Id.* at 178–79. In

333

other words, the two defendants were claiming that there had to be a showing that they had the intent to "stiff" their supplier.

¶ 32. The *Blaisdell* court rejected the claim. It held that all the State needed to do in the criminal action was to prove that the defendants intentionally used the funds received from the general contractor for purposes other than payment to the supplier. *Id.* at 178. The *Blaisdell* court cited a memorandum from Professor Walter Raushenbush saying that "[i]f a contractor is building several houses and uses a progress payment on the most recent one to pay off the subs on a previous one, that is larceny." *Id.* Thus, "intent to defraud" was not synomymous with an intent to "stiff," but rather with the state of mind to use the money held in trust for purposes other than to pay the people who did the work for which the money was held in trust. The trial court in our case put it nicely. It said that the "intentional requirement doesn't require an intention to commit a criminal act, just requires that the conduct be intentional." The trial court was correct.

¶ 33. And how does the State, in a criminal action, prove that the defendant had the state of mind to use the money held in trust for another purpose? *Blaisdell* supplies the answer. The court wrote: "[I]ntent is a state of mind which can be evidenced only by words or conduct of the person who is claimed to have entertained it." *Id.* at 180 (citation omitted). Thus, proof of "intent to defraud" requires no more than the production of sufficient evidence to establish criminal intent. *Hess*, 99 Wis. 2d at 29. An example of such conduct is the receipt of money held in trust for paying the supplier or subcontractor but using the money to pay other suppliers or contractors or using it to pay oneself. *Id.* at 31–32.

¶ 34. The elements necessary for a conviction under WIS. STAT. § 943.20(1)(b) are as follows: (1) the defendant acted as prime contractor, (2) the defendant received money for the improvement of land from the owner or a mortgagee, (3) the defendant intentionally used the money for purposes other than the payment of bona fide claims for labor or materials prior to the payment of such claims; (4) the use was without the owner or mortgagee's consent, (5) the defendant knew the use was without consent and contrary to his authority, and (6) the defendant used the money with intent to convert it to his own use or the use of another. *Hess*, 99 Wis. 2d at 28.

¶ 35. Moreover, the theft statute states that a refusal to pay money to the subcontractor or supplier out of the trust fund is prima facie evidence of an intent to convert to his or her own use within the meaning of the statute.

██

¶ 36. Applying these standards to the summary judgment record, we find sufficient facts to allege an action under WIS. STAT. § 943.20(1)(b). Schmidt is identified in the complaint as the person who owned the company that was the prime contractor. The complaint and the affidavit in support of the summary judgment detail the nature of the contract, the payment by The Frantz Group for installing the cables and the nonpayment by Schmidt, despite accepting the material without objection and despite numerous demands for payment. From this conduct, Tri-Tech has laid out a prima facie case that Schmidt knew his company had the money in trust for Tri-Tech, knew that he had a fiduciary duty to pay those funds to Tri-Tech and misappropriated those funds for his or another use.

¶ 37. To this record, there is no affidavit by Schmidt in opposition. The result of that failure is that the prima facie case, set forth by Tri-Tech, lies unrebutted. Tri-Tech has thus made its case for criminal intent to defraud it by a preponderance of the evidence. There is simply no pleading in the summary judgment record to join the issue.

¶ 38. The trial court surmised, "had Schmidt supplied an affidavit saying he meant to deposit the money into a trust account, but he put the wrong account number on the deposit form that would be the kind of factual issue that would contest whether it was intentional. But there is no factual issue of any kind about that. . . . So there is no genuine issue of material fact." In our view, the trial court has, by hypothetical, accurately explained the difference between the civil contractor theft statute and the criminal statute. Had Schmidt provided an affidavit with the kind of information outlined in the trial court's hypothetical, then there would be a question of whether he intended to pay the money out of a trust fund for other purposes. Had he supplied such an affidavit and had the finder of fact ultimately chosen to believe his side of the story, he still would have been liable under the civil contractor theft statute because the money did not go to Tri-Tech as the civil statute commands. But he would not have been liable under the criminal statute because while Tri-Tech was not paid, it was not because Schmidt had knowledge that he was using the trust fund to pay other sources.

¶ 39. We affirm the trial court.

*By the Court.*—Judgment and order affirmed.