STATE of Wisconsin, Plaintiff-Respondent,

v.

David SOBKOWIAK, Defendant-Appellant.†

Court of Appeals

*No. 91-0583-CR. Oral argument November 11, 1991.—Decided December 17, 1992.*

(Also reported in 496 N.W.2d 620.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *James E. Doyle,* attorney general, and *Christopher G. Wren,* assistant attorney general.

For the plaintiff-respondent the cause was submitted on the briefs of *Jeff Brinckman* of *Brinckman & Brinckman* of La Crosse.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

SUNDBY, J. The defendant, David J. Sobkowiak, is a "prime contractor" as defined in sec. 779.01(2)(d), Stats., of Wisconsin's construction lien law.[1] He appeals from a judgment entered on a jury verdict convicting him of theft by contractor, contrary to secs. 779.02(5), and 943.20(1)(b), Stats. He also appeals from an order requiring him to make restitution of the amount he is alleged to have misappropriated. We affirm the judgment, but reverse the restitution order with directions.

## ISSUES

Sobkowiak presents the following issues:

(1) Did the trial court err in rejecting evidence of his credit arrangement with a major materials supplier which: (a) would have shown that the supplier was paid; and (b) would have negated any intent to misappropriate the funds he held in trust for laborers and materialmen? We conclude that the trial court correctly rejected Sobkowiak's evidence because Sobkowiak did not offer

---

[1] Section 779.01(2)(d), Stats., provides:

"Prime contractor" means:

1. A person . . . who enters into a contract with an owner of land . . . to improve the land . . ..

to show that the credit arrangement was effective before he used the trust funds for his own purposes.

(2) Did the trial court err in rejecting Sobkowiak's requested instructions which would have informed the jury that there was a sixth "intent" element of the offense of theft by contractor, and that the state had to show that Sobkowiak intended to defraud the laborers and materialmen? We conclude that the pattern instruction which the trial court gave, Wis J I—Criminal 1443, correctly instructed the jury as to the law.

(3) Did the trial court erroneously exercise its discretion when it refused to accept the plea agreement between the state and Sobkowiak? We conclude that Sobkowiak waived his right to have this issue reviewed because he did not object when the prosecutor moved the court to withdraw the negotiated plea.

(4) Did the trial court err in determining the amount of restitution? The state concedes that the trial court did not calculate restitution correctly. We therefore reverse the restitution award and remand for redetermination.

## BACKGROUND

On August 22, 1989, Sobkowiak contracted with Craig and Cheryl Friell to build a home for them. The Friells obtained a construction loan of $99,200 from the State Bank of LaCrosse. On December 5, 1989, Sobkowiak requested a $65,000 draw from the construction loan account. In accordance with the bank's usual procedure, mortgage loan officer Sandra Kraft obtained an appraisal which showed that the construction was approximately sixty-five percent complete. The bank then issued a cashier's check to Sobkowiak's company, Construction Design Inc. (CDI), which Sobkowiak deposited in the company's checking account.

331

Kraft testified that on December 4, 1989, the balance in CDI's account was $442.95. On December 5, Sobkowiak deposited the $65,000 draw and an additional $667.50 to the CDI account. On December 20, he deposited $3,691.19 to the company's account. At the close of business on December 22, CDI's balance was $446. Thus, from December 5 through December 22, 1989, Sobkowiak disbursed $69,355.64 from CDI's account.

I.

EVIDENCE OF CREDIT ARRANGEMENT

As of December 22, 1990, Sobkowiak's Company, CDI, owed Northwest Wholesale Lumber, Inc., $30,997.60 for materials supplied to CDI for the Friell construction. Sobkowiak offered to show at trial that Northwest Wholesale Lumber had waived its claim to any of the construction loan proceeds and had accepted a credit arrangement with Sobkowiak in lieu thereof. Sobkowiak argues that evidence of the subsequent waiver and credit arrangement was relevant to show that he had satisfied Northwest Wholesale Lumber's claim and to show that he did not intend to defraud the laborers and materialmen. The trial court rejected Sobkowiak's offers of proof.

██ We conclude that Sobkowiak's evidence was not relevant because he did not offer to show that the credit arrangement with Northwest Wholesale Lumber was effective prior to his use of trust funds for purposes other than payment of laborers and materialmen on the Friell contract. Even if relevant, Sobkowiak does not show how the credit arrangement with Northwest Wholesale Lumber and its waiver of its lien rights would have legit-

imated his use of the trust fund created under sec. 779.02(5), Stats., for his personal purposes.

Section 779.02(5), Stats., provides:

> The proceeds of any mortgage on land paid to any prime contractor . . . for improvements upon the mortgaged premises . . . constitute a trust fund only in the hands of the prime contractor . . . to the amount of all claims due or to become due or owing from the prime contractor . . . for labor and materials used for improvements, until all the claims have been paid . . .. The use of any such moneys by any prime contractor . . . for any other purpose until all claims, except those which are the subject of a bona fide dispute and then only to the extent of the amount actually in dispute, have been paid in full or proportionally in cases of a deficiency, is theft by the prime contractor . . . of moneys so misappropriated and is punishable under s.943.20 [theft by fraud].[2]

---

[2] Section 779.02(5), Stats., is part of the construction lien law, ch. 779, subch. I, Stats. The construction lien law first appears as ch. 120, R.S. 1849. Chapter 120 was merely a lien law; it did not place restrictions on the expenditure of funds paid to a contractor by the owner. The requirement that monies paid by the owner to the principal contractor constitutes a trust fund in the hands of the contractor was added to the construction lien law by ch. 549, Laws of 1915. *See* sec. 3315(3), Stats. (1915).

In *Pauly v. Keebler*, 175 Wis. 428, 430, 185 N.W. 554, 556 (1921), the court rejected a constitutional attack on the statute as "class legislation of the worst kind." The plaintiff argued that the lien law gave the lienholder a remedy in excess of that given to other creditors. *Id.* at 432, 185 N.W. at 556. He contended that the next step would be for the legislature to make all debtors trustees for their creditors. *Id.* at 434, 185 N.W. at 557. The court rejected the constitutional attack, stating:

> The legislature, mindful of the abuses and the injustice which often arose when contractors failed to perform this duty by neglecting to pay over to third persons moneys intrusted to them for that purpose,

In *Burmeister Woodwork Co. v. Friedel,* 65 Wis. 2d 293, 302, 222 N.W.2d 647, 652 (1974), the court said:

> It is important to note that the funds upon which the statute imposes the trust were received by the contractor for a particular purpose, the construction of improvements upon property. The statute imposes the trust to insure that one who receives money for this purpose uses it to that end.
>
> The prime contractor does not actually own the funds. His only interest is that of a trustee.

This statement is correct as to the funds paid to Sobkowiak only if his entire draw of $65,000 was required to pay claims for labor and materials due or to become due. We conclude the following statement of the *Burmeister* court correctly states the law: "Under this section [sec. 779.02(5), Stats.], the [proceeds of any mortgage for improvements upon the mortgage premises] can only be used for the payment of claims of the beneficiaries *until all such claims are paid."* *Id.* at 299, 222 N.W.2d at 651 (emphasis added). Thus, if all claims due or to become due or owing from Sobkowiak for labor and materials had been paid and a balance remained from the $65,000 draw, Sobkowiak was free to use the balance for personal and other corporate purposes.

We understand Sobkowiak's argument to be that if he had been allowed to show he had satisfied CDI's obligation to Northwest Wholesale Lumber in the amount of $30,997.60, there could have been no misappropriation because the jury found that he had misap-

---

enacted that such moneys should be a trust fund and that their misappropriation should be embezzlement.

*Id.* at 435, 185 N.W. at 557. The court held that these reasons were sufficient to justify the classification selected by the legislature.

propriated only $24,098.93. Sobkowiak's argument fails because he did not show that his credit arrangement with Northwest Wholesale Lumber became effective before he used the trust funds for purposes other than payment of labor and materials claims on the Friell contract. Sobkowiak admitted on cross-examination that on December 5 and 6, 1989, he paid $18,811.64 for labor and materials on other jobs, a car lease payment, and a telephone bill out of CDI's account.

Sobkowiak's chronological accounting of the expenses he incurred on the Friell contract shows that as of December 5, 1989, they totalled $48,913.21; as of December 22 they totalled $66,671.70. However, he did not show that he used the $65,000 draw to pay those expenses before he used the draw for other corporate and personal purposes.

Sobkowiak correctly states that he was entitled to reimburse himself for payments he had made for labor and materials on the Friell job before he received the $65,000 draw. The trial court agreed with his position. Sobkowiak itemized payments he made on the Friell contract totalling $83,706.74. However, he provided invoice dates, but not payment dates for his incurred costs. The trial court invited Sobkowiak to create a list of all payments made and compensation taken prior to December 22, 1989. He did not do so. He offered cancelled payroll checks totalling $1,269.50 as evidence of advances he had made on the Friell contract prior to December 22, 1989.

Sobkowiak offered to show his credit arrangement with Northwest Wholesale Lumber by introducing a lien waiver for December 1989; a note to Northwest Wholesale Lumber for $50,600, dated February 1990; and two cancelled checks to Northwest Wholesale Lumber showing payments on the note on May 31, 1990. He also

335

offered to show through a representative of Northwest Wholesale Lumber that "at some point in time" the invoices to CDI on the Friell contract were removed from the current accounts receivable listing. But, as the trial court observed: "The money was gone before he [Sobkowiak] even talked to Northwest."

We conclude that the trial court correctly rejected Sobkowiak's offers of proof which did not identify payments or credit arrangements made by Sobkowiak on the Friell contract before December 22, 1989, when the $65,000 drawn had been spent. Sobkowiak could not cure his theft by ultimately repaying the funds diverted to his personal use or by satisfying the claims of the laborers and materialmen after his offense was complete. *Mueller v. State*, 208 Wis. 550, 555, 243 N.W. 411, 413 (1932).

## II.

## INSTRUCTIONAL ERROR

We next consider Sobkowiak's claim that the trial court erred in rejecting his proposed instructions on the issue of intent. Sobkowiak requested that the trial court modify the pattern instruction, Wis J I—Criminal 1443, by adding the following language in describing the elements of the offense of theft by contractor:

> Sixth, that the defendant used such money with intent to convert it to his own use. The phrase "intent to convert to his own use" means that the defendant must have had the mental purpose to use, appropriate or convert such money to his own personal use. You cannot look into a man's mind to find out his intent. While this intent to convert, use or appropriate the money to his own use must be found

as a fact before you can find the defendant guilty of theft by a contractor, it must be found, if found at all, from his acts and his words and statements, if any, bearing upon his intent.

Sobkowiak pointed out that this language was taken from the 1976 version of Wis J I—Criminal 1443, approved in *State v. Wolter*, 85 Wis. 2d 353, 367-70 n.11, 270 N.W.2d 230, 238-39 n.11 (1978).

The Criminal Jury Instructions Committee deleted this language from the pattern instruction approved by the committee in December 1991. The committee stated:

> The 1976 version of J I—1443 included a sixth element which emphasized that the defendant must act with intent to convert the funds to his own *personal* use. This element has been eliminated as possibly confusing in light of . . . [*State v. Hess*, 99 Wis. 2d 22, 298 N.W.2d 111 (Ct. App. 1980), *State v. Blaisdell*, 85 Wis. 2d 172, 270 N.W.2d 69 (1978), and *State v. Wolter*, 85 Wis. 2d 353, 270 N.W.2d 230 (Ct. App. 1978)] . . .. The matter is not as clear as one would like, since *Hess* and *Wolter* both cite the 1976 version of J I—1443 with approval while reaching conclusions that are arguably inconsistent with the instruction's emphasis on "personal use." The Committee takes the position that using the trust fund money for any purpose other than paying off the lienholders is "personal use" and thus the sixth element in the 1976 instruction was redundant.

■

Wis J I—Criminal 1443 at 5, cmt. 7 (emphasis in original).

The comments of the Wisconsin Criminal Jury Instructions Committee are persuasive, but not binding authority. *State v. Gavigan*, 122 Wis. 2d 389, 393, 362 N.W.2d 162, 164 (Ct. App. 1984). We agree that the

sixth element in the 1976 pattern instruction was redundant. Section 779.02(5), Stats., prohibits the use by a prime contractor of trust funds "for any other purpose" than the payment of claims as provided thereunder. The pattern instruction provides as follows:

> The third element requires that the defendant intentionally used a part of the money for a purpose other than the payment of claims due or to become due from him for labor or materials used in the improvements before all claims were paid in full. "Intentionally" means that the defendant must have had a purpose to use the money for other than the payment of claims due or to become due from him for labor or materials used in the improvements before all such claims were paid.

The instruction thus correctly states the intent element for the offense of theft by contractor.

Sobkowiak argues, however, that sec. 779.02(5), Stats., requires an intent to defraud. He therefore requested that the trial court instruct the jury that: "[T]o sustain a conviction the state must prove beyond a reasonable doubt that the defendant intended to defraud." He quotes from *State v. Blaisdell*, 85 Wis. 2d at 176, 270 N.W.2d at 72 (citing *Pauly*, 175 Wis. at 436, 185 N.W. at 558): "To sustain a conviction under sec. 289.02(5), Stats. [now sec. 779.02(5)], the state must prove beyond a reasonable doubt that the defendants intended to defraud just as it would in a prosecution for theft." Sobkowiak appears to argue that as long as he intended to pay the laborers and materialmen, he did not have the requisite intent to defraud. To establish his lack of intent, Sobkowiak again attempted to show his credit arrangement with Northwest Wholesale Lumber.

In *Hess*, 99 Wis. 2d at 28-29, 298 N.W.2d at 114, we explained what we meant in *Blaisdell* when we stated

that the state "must prove intent to defraud beyond a reasonable doubt." We said:

> The court was merely attempting to elucidate that some additional element of culpability, whether it be denominated as wrongful, criminal, fraudulent, felonious, or wrongfully fraudulent, must be shown to sustain a criminal conviction for theft by contractor. All of these terms are used by our supreme court and this court to delineate the type of intent which distinguishes a criminal from the civil action. . .. From this looseness of language, we conclude that proof of an "intent to defraud" in an action for theft by contractor requires no more than the production of sufficient probative evidence to establish criminal intent. [Citation omitted.]

Thus, to establish a violation of sec. 779.02(5), Stats., it is not necessary that the state show beyond a reasonable doubt that the prime contractor intended to permanently deprive laborers and materialmen of compensation. The intent establishing the violation is the intent to use moneys subject to a trust for purposes inconsistent with the trust. "The fraud and crime inhere in the act, and were not eliminated therefrom by any mere mental process, however amiable or virtuous it may have been." *State v. Leicham*, 41 Wis. 565, 580 (1877).

## III.

## REJECTION OF PLEA

Sobkowiak argues that the trial court abused its discretion when it refused to accept Sobkowiak's no contest plea to an amended complaint charging him with misdemeanor theft. At a preliminary hearing, the prosecutor and Sobkowiak's counsel advised the court as to

the plea agreement. However, they both explained that it would be necessary to have a restitution hearing because whether Sobkowiak owed restitution and the amount thereof was in dispute. Sobkowiak claimed he did not owe restitution.

The trial court stated: "I don't understand how there can be any crime if there is no restitution owed." The prosecutor then conferred with the Friells as to what they claimed was due to them and perhaps to other persons. After conferring with the Friells, the prosecutor recommended that the negotiated plea be rejected. He stated: "My request at this time given the developments and given the fact that I thought we had a plea agreement, which obviously we don't, is that the preliminary hearing in this matter be reset." At that point, Sobkowiak's counsel stated:

> Your Honor, we were prepared last week for the preliminary and it was put off until today and then we reached this agreement this morning which the state is now asking you to not approve. I am prepared right now to get started on a preliminary in this court, if that's going to be the decision of the court.

The court did not specifically reject the plea agreement, but stated that it would set a time for a new preliminary hearing. At most, the court acquiesced, without objection from Sobkowiak, in the prosecutor's decision to withdraw the plea agreement. By not objecting to the prosecutor's decision to withdraw the plea agreement, Sobkowiak waived any right to have the issue reviewed by this court.

## IV.

## RESTITUTION

On February 6, 1991, after the restitution hearing, the trial court entered an order requiring Sobkowiak to make restitution to the Friells in the amount of $7,145.92. That amount included $713.48 allegedly improperly paid to Sobkowiak and his associate from the $65,000 construction loan draw.[3] However, the state concedes that if the trial court had allowed Sobkowiak to show his credit arrangement with Northwest Wholesale Lumber, there would have resulted a full accounting for the $65,000 draw, eliminating the portion of the restitution award attributable to the amounts allegedly improperly paid. We conclude that the state's analysis is correct. We therefore reverse the restitution award and remand with directions that the trial court deduct $713.48 from the award.

Sobkowiak claims that the Friells owe him $18,706.74 on his contract with them. He argues that the restitution award should be reduced to zero because the Friells owe him more than the award. Whether the Friells owe Sobkowiak a balance on the contract is an issue to be litigated in the civil courts. The trial court correctly rejected Sobkowiak's claim that the restitution award should be offset against the amount he claims against the Friells.

---

[3] The state agrees that Sobkowiak has made full restitution to the Friells for sums he converted to his own use from the $65,000 draw. The trial court ordered Sobkowiak to compensate the Friells for their attorney fees, interest expense and lost income.

*By the Court.*—Judgment affirmed; order reversed and cause remanded with directions.