CAPITAL CITY SHEET METAL, INC., Plaintiff-Respondent,

v.

Marta VOYTOVICH, Defendant,

FEHRMAN HOMES, INC., and Timm Fehrman,
Defendants-Appellants.

Court of Appeals

*No. 97–1588. Submitted on briefs February 11,
1998.—Decided March 5, 1998.*

(Also reported in 578 N.W.2d 643.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Kent I. Carnell* and *Lisa Pierobon Mays* of *Lawton & Cates, S.C.,* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Harry E. Van Camp* of *Hayes, Van Camp & Schwartz, S.C.,* of Madison.

Before Eich, C.J., Roggensack and Deininger, JJ.

EICH, C.J.   Timm Fehrman, president of Fehrman Homes, Inc., appeals from a judgment holding him jointly and severally liable with the corporation for

$3,831.86. Capital City Sheet Metal, Inc., a subcontractor of Fehrman Homes, the general contractor on a project, initiated the lawsuit.

The issue is whether, under the facts, Fehrman may be held personally liable to Capital City under the theft-by-contractor statute, § 779.02(5), STATS., which imposes a trust in favor of due or about-to-become-due claims of subcontractors and suppliers on all funds paid by the owner to the general contractor—and also imposes personal liability on the general contractor for breach of that trust. We conclude that Fehrman did not violate the statute and we therefore reverse the judgment insofar as it subjects him to personal liability. Because Fehrman does not otherwise challenge the judgment, we affirm it in all other respects.

Fehrman Homes was the general contractor for the construction of a house for Marta Voytovich. The contract price was $148,000, and construction began in the spring of 1995. As one of the subcontractors, Capital City installed the roof. In August 1995, the deal apparently soured and Voytovich canceled the contract—having paid Fehrman Homes a total of $125,771.68—and hired another contractor to complete construction of her house. Fehrman Homes ultimately paid $127,777.09 to various subcontractors (including Capital City), for labor and materials used on the Voytovich project.

Capital City sued Fehrman Homes, Timm Fehrman and Voytovich in small claims court, claiming that it had received only $5,500.00 from Fehrman on a total contract price for the roofing work of $9,058.00, and demanding the "balance" of $3,558.00.[1] Capital City

---

[1] Capital City's action also named Voytovich as a defendant, seeking $1,270.00 from her and $2,288.00 from Fehrman (for a

sought to hold Timm Fehrman personally liable for that amount under § 779.02(5), STATS., which provides in pertinent part:

> **(5)** THEFT BY CONTRACTORS. . . . [A]ll moneys paid to any prime contractor . . . by any owner for improvements, constitute a trust fund only in the hands of the prime contractor . . . to the amount of all claims due or to become due or owing from the prime contractor . . . for labor and materials used for the improvements . . . . The use of any such moneys by any prime contractor . . . for any other purpose until all [undisputed] claims . . . have been paid in full or proportionally in cases of a deficiency, is theft by the prime contractor . . . of moneys so misappropriated . . . . If the prime contractor . . . is a corporation, such misappropriation also shall be deemed theft by any officers . . . of the corporation responsible for the misappropriation.

Fehrman had moved for summary judgment declaring the statute inapplicable, but the court never rendered a decision on the motion and the case proceeded to trial. After hearing the evidence, the court considered Fehrman's summary judgment motion and, on the basis of pretrial affidavits and apparently the trial testimony, the court concluded that Timm Fehrman was personally liable to Capital City and entered judgment for $3,558.00 plus costs. Fehrman's appeal challenges only the "personal liability" portion of the judgment.

---

total of $3,558.00). The trial court dismissed Voytovich from the action, leaving Fehrman Homes and Fehrman as the sole defendants. The case was consolidated with a pending circuit court action another subcontractor brought against Fehrman and Voytovich. The issues in that action were resolved short of trial, leaving only Capital City's claims.

The issue, which involves the interpretation and application of statutes, is one of law that we decide independently, owing no deference to the trial court's decision. *Minuteman, Inc. v. Alexander*, 147 Wis. 2d 842, 853, 434 N.W.2d 773, 778 (1989).

Pointing to the language in § 779.02(5), STATS., that places the funds in trust to pay claims "for labor and materials used [on the contract]," Fehrman argues that the trial court erred in applying the statute to him in light of the undisputed evidence that all funds he received from Voytovich were paid out to various subcontractors, laborers and suppliers—including Capital City—for work on Voytovich's house. Capital City summarizes its argument as follows: "Voytovich paid Fehrman for [Capital City's] labor and materials. Fehrman accepted that money in trust for payment to [Capital City]. Fehrman breached the trust by using money held in trust for [Capital City] for the payment of other corporate obligations."

Capital City overstates the record in setting forth the underlying factual basis for its argument that the money Voytovich paid to Fehrman was designated solely for Capital City's work. It is true that Voytovich acknowledged "[her] position that [she had] made payment to Mr. Fehrman to satisfy any obligation that [she] would have in the construction project . . . related to the roofing that Capital City . . . was responsible for." The record reveals, however, that, under the terms of the general contract, that "payment" was, in reality, a $35,000 "draw" to be released to Fehrman "upon completion of rough framing, rough elec., rough plumbing, rough heating and roofing."[2] Additionally, as Fehrman

---

[2] The $35,000 draw was the second in a series of five payments under the terms of the contract. The first draw ($29,500) was paid out upon completion of the septic system, well and

points out, his invoice to Voytovich for the $35,000 draw was dated May 16, 1995, and she paid it on May 17—three days *before* Capital City first billed Fehrman for the roofing work. It appears, then, that not only was Capital City just one of several subcontractors whose work was represented by Fehrman's $35,000 draw, but Capital City had not even invoiced Fehrman for its work when the funds were drawn.

The legal foundation for Capital City's argument is equally problematic, for the case on which it places principal reliance, *Capen Wholesale, Inc. v. Probst*, 180 Wis. 2d 354, 364, 509 N.W.2d 120, 124 (Ct. App. 1993), is largely inapposite. In that case, a supplier delivered roofing materials to the general contractor, who used them on several projects for which he received full payment. Because the contractor did not pay the supplier, but instead used the funds he received to pay other, unrelated "corporate expenses," we concluded that he had violated § 779.02(5), STATS. We agree that the contractor need not misappropriate the funds for purely personal gain to be personally liable under the statute; the statute also applies where the contractor uses the "trust" funds for "corporate" purposes unrelated to the contract in question.[3] But in this case, Fehrman used

---

excavation; the third draw ($30,000) was due upon completion of insulation, drywall and trim; the fourth draw ($20,000) upon completion of the house; and a final payment ($4,400) "within 20 days of finish."

[3] The cases we relied on in *Capen Wholesale, Inc. v. Probst*, 180 Wis. 2d 354, 509 N.W.2d 120 (Ct. App. 1993), illustrate the point. In *Burmeister Woodwork Co. v. Friedel*, 65 Wis. 2d 293, 295–96, 222 N.W.2d 647, 649 (1974), the general contractor used approximately $30,000 of funds payable to subcontractors for "miscellaneous" corporate expenses, including contributions to the president's salary and an automobile lease that were

the funds received from Voytovich to pay the very people and entities on whose behalf the statute imposes the trust: the subcontractors and the suppliers of labor and materials for the Voytovich project.

The statutory language is plain and unambiguous. It imposes a trust on funds the contractor receives from the owner, requiring that those funds be used only for payments "for labor and materials used" in performing the contract. Section 779.02(5), STATS. Using the funds for some other purpose—whether personal or corporate—violates the statute, and the officers of the corporation may be held personally liable to the subcontractors and suppliers. The statute's purpose is simply stated: "[It imposes a trust upon funds] received by the contractor for a particular purpose, the construction of improvements upon property. The statute imposes the trust to insure that one who receives money for this purpose uses it to that end." *State v. Sobkowiak*, 173 Wis. 2d 327, 334, 496 N.W.2d 620, 623 (Ct. App. 1992) (quoted source omitted).

In this case, Fehrman Homes received a total of $125,771.68 from Voytovich, and the evidence established that Fehrman paid at least $127,777.09 to Capital City and other subcontractors and persons furnishing labor and materials for the Voytovich project. The record does not indicate that any of the funds Fehrman received from Voytovich went to anyone else or for any other purpose. It is true that Capital City did not

wholly unrelated to the contract. Similarly, in *Weather-Tite Co. v. Lepper*, 25 Wis. 2d 70, 71, 130 N.W.2d 198, 198 (1964), the contractor used the trust funds for expenses incurred "in the ordinary and normal operation of its business" in matters unrelated to the contract issue.

get paid the full amount of its invoice, but that is not the test under the statute. The test is whether the money was, or was not, paid for "labor and materials used for the [contracted-for] improvements," § 779.02(5), STATS., and the record in this case unequivocally establishes that it was.[4]

We therefore reverse the judgment insofar as it holds Timm Fehrman personally liable to Capital City and remand for further proceedings consistent with this opinion. In all other respects we affirm.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.

■■■■

[4] Although Capital City does not specifically assert or argue that some of the Voytovich funds were used to pay expenses of Fehrman Homes for labor and materials Fehrman furnished to the project, to the extent its brief might be read to include such a claim, we note that we rejected a similar contention in *State v. Sobkowiak*, 173 Wis. 2d 327, 335, 496 N.W.2d 620, 624 (Ct. App. 1992), when we stated that the contractor in that case "was entitled to reimburse himself for payments he had made for labor and materials" without running afoul of § 779.02(5), STATS.