State of Wisconsin, Plaintiff-Respondent,

v.

Angela A. Keyes, Defendant-Appellant.†
[Case No. 2004AP1104-CR.]

State of Wisconsin, Plaintiff-Respondent,

v.

Matthew E. Keyes, Defendant-Appellant.†
[Case No. 2004AP1105-CR.]

Court of Appeals

*Nos. 2004AP1104–CR, 2004AP1105–CR.*
*Oral argument January 27, 2005.—Decided June 14, 2007.*

2007 WI App 163

(Also reported in 736 N.W.2d 904.)

† Petition to review grant 10/10/07.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Michael J. Devanie* of *Devanie & Belzer, S.C.*, La Crosse. There was oral argument by *Michael J. Devanie*.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *William C. Wolford,* assistant attorney general, and *Peggy A. Lautenschlager*, attorney general. There was oral argument by *William C. Wolford.*

Before Dykman, Vergeront and Higginbotham, JJ.

¶ 1. HIGGINBOTHAM, J. Angela A. Keyes and Matthew E. Keyes own and operate Keyes to Design, Inc., a construction contracting company. They were charged with felony theft by contractor, party to a crime, in violation of WIS. STAT. §§ 779.02(5), 939.05, and 943.20(1)(b) and (3)(c) (2001–02).[1] A preliminary hearing was held, after which the circuit court bound the Keyeses over for trial. The Keyeses moved to dismiss the bindover and the information, which the circuit court denied. We granted their motion for leave to appeal the circuit court's order denying their motion.

¶ 2. The Keyeses argue that the State failed to establish the elements of the offense of felony theft by contractor at their preliminary hearing, thereby pre-

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted. We note that the information filed in both Matthew and Angela Keyes' cases listed the statutory provisions underlying the charge as WIS. STAT. §§ 939.05, 779.02(2) and 943.20(1)(b) and (3)(c). However, the reference to WIS. STAT. § 779.02(2) is apparently a typographical error; the theft by contractor provision of § 779.02 is subsection (5), not (2). It is clear that this reference is a typographical error, rather than an intentional reference to subsection § 779.02(2), because the information contains the "theft by contractor" heading, which can only describe § 779.02(5), not § 779.02(2). Furthermore, the parties consistently describe the statute at issue as § 779.02(5), not § 779.02(2), as did the circuit court, most pertinently in its order being appealed in this case.

cluding bindover. This argument rests on their interpretation of WIS. STAT. § 779.02(5) as permitting a prime contractor also acting as a subcontractor to pay itself for the profit on items supplied as a subcontractor before all other subcontractors have been paid in full for labor and materials or paid proportionately in cases of a deficiency.

¶ 3. The State argues that the circuit court properly refused to dismiss the felony charges against the Keyeses because WIS. STAT. § 779.02(5) prohibits a prime contractor from paying itself profit on items supplied as a subcontractor before all other subcontractors have been paid for labor and materials in full, or proportionately in cases of a deficiency. The State also argues that there was sufficient evidence supporting bindover.

¶ 4. We conclude that WIS. STAT. § 779.02(5) prohibits contractors from taking a profit on materials supplied as a subcontractor before all other subcontractors have been paid in full for their labor and materials for amounts due and owing or to become due, or paid proportionally in cases of a deficiency. We further conclude that there was sufficient evidence to support bindover of the Keyeses.[2] We therefore affirm the circuit court's order denying the Keyeses' motion to dismiss the bindover.

---

[2] Following oral arguments, we asked the parties to brief the question of whether WIS. STAT. § 779.02(5) was unconstitutionally vague. Because the Keyeses concede that § 779.02(5) is not unconstitutionally vague, on its face or applied, albeit based on their erroneous construction of the statute, and also fail to make a sufficiently developed argument that it is unconstitutionally vague based on the State's construction of the statute, we do not address this argument further. *See State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) (we decline to address inadequately briefed arguments).

## BACKGROUND

¶ 5. In December 2001, Angela and Matthew Keyes, d/b/a "Keyes to Design, Inc.," entered into a written contract with James and Rose Wettstein to build the Wettsteins a home. The parties agreed on a contract price of $2,500 for pre-construction services and $37,500 for construction services plus the cost of the work. The contract also provided that Matthew, the project manager, would be paid $50.00 per hour for labor. The construction cost was estimated at $467,723, which was later revised to $492,204.

¶ 6. On May 28, 2003, Angela was charged with one count of felony theft by contractor as a party to a crime; Matthew was charged with the same felony on June 3, 2003. The court held a preliminary hearing on both cases; after finding probable cause that the Keyeses had committed a felony, the court bound over both defendants for trial. An information was filed against the Keyeses, charging them with the same crime listed in the complaint, as well as an additional charge of criminal slander of title as a party to a crime.[3]

¶ 7. On November 13, 2003, the Keyeses filed a motion to dismiss the bindover, alleging insufficiency of evidence. In their motion, the Keyeses argued that Angela was authorized by contract to keep the $36,036.28 at issue in this case, and that the Keyeses therefore did not violate the law. In a written order dated April 6, 2004, the circuit court denied the motion, concluding that the evidence at the preliminary hearing supported a reasonable inference that the Keyeses had probably committed a felony, theft by contractor, in violation of WIS. STAT. §§ 779.02(5) and 943.20(1)(b). We granted the Keyeses' petition for leave to appeal the

---

[3] The slander of title charge is not at issue on this appeal.

circuit court's order denying the motion to dismiss the bindover as well as their motion to consolidate their appeals.

¶ 8. After the appellate briefs were filed, we held oral arguments. We then determined that additional briefing was necessary. In a February 1, 2005 order we directed the parties to address the following issues:

> (1) Does Wis. Stat. § 779.02(5) prohibit a prime contractor who acts as a subcontractor from paying itself for the profit on items supplied as a subcontractor before all other subcontractors have been paid in full or proportionately in cases of a deficiency? The parties should discuss whether the statute is ambiguous on this point and, if it is, what the proper resolution of the ambiguity is.

> (2) Is Wis. Stat. § 779.02(5) unconstitutionally vague because it is not sufficiently definite to give a person of ordinary intelligence who seeks to avoid its penalties fair notice of the conduct required or prohibited with respect to a prime contractor acting as a subcontractor.

Additional briefing ensued.

## DISCUSSION

¶ 9. In this appeal we address two issues: (1) whether Wis. Stat. § 779.02(5)[4] prohibits a prime contractor who also acts as a subcontractor from taking

---

[4] Although the "felony theft by contractor" criminal charge against the Keyeses also includes the intent element of Wis. Stat. § 943.20(1)(b), the felony element of § 943.20(3)(c), and the "party to a crime" element of Wis. Stat. § 939.05, we will at times refer to the statutes collectively as Wis. Stat. § 779.02(5). This is because § 779.02(5) sets forth the basic elements for the offense of theft by contractor. These same elements are incorporated by § 943.20(1)(b), which elevates the violation of

a profit on items supplied as a subcontractor before all other subcontractors have been paid for labor and materials in full, or proportionately in cases of a deficiency; and (2) whether there was sufficient evidence to support a bindover. We address each issue in turn.

## A. WISCONSIN STAT. § 779.02(5)

¶ 10. This case requires us to interpret and apply WIS. STAT. § 779.02(5). Statutory interpretation is a question of law, which we review de novo. *State v. Stenklyft*, 2005 WI 71, ¶ 7, 281 Wis. 2d 484, 697 N.W.2d 769.

¶ 11. Statutory interpretation begins with the statute's text; we give the text its common, ordinary, and accepted meaning, except that we give technical or specially defined words their technical or special definitions. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We interpret statutory language in the context within which it is used, "not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶ 46. In construing a statute we are to give deference to the policy choices made by the legislature in enacting the law. *Id.*, ¶ 44. We also consider the scope, context and structure of the

§ 779.02(5) to a crime where intent is also present, and § 943.20(3)(c), which, in the 2001–02 version of the statute, elevated it to a Class C felony where the value of the misappropriated money exceeds $2,500. *See* § 779.02(5); *Tri-Tech Corp. of Am. v. Americomp Servs., Inc.*, 2002 WI 88, ¶¶ 22–26, 254 Wis. 2d 418, 646 N.W.2d 822; WIS JI—CRIMINAL 1443.

statute itself. *Id.*, ¶¶ 46, 48. If this process of analysis yields a plain meaning, then there is no ambiguity and we apply that plain meaning. *Id.*, ¶ 46. If, however, a statute is ambiguous, we may consider certain extrinsic sources, typically the legislative history, to ascertain its meaning. *Id.*, ¶¶ 46, 48, 50–51. "A statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more senses." *Id.*, ¶ 47.

¶ 12. WISCONSIN STAT. § 779.02(5) (2001–02)[5] provides in relevant part:

> THEFT BY CONTRACTORS. The proceeds of any mortgage on land paid to any prime contractor or any subcontractor for improvements upon the mortgaged premises, and all moneys paid to any prime contractor or subcontractor by any owner for improvements, constitute a trust fund only in the hands of the prime contractor or subcontractor to the amount of all claims due or to become due or owing from the prime contractor or subcontractor for labor and materials used for the improvements, until all the claims have been paid, and shall not be a trust fund in the hands of any other person. The use of any such moneys by any prime contractor or subcontractor for any other purpose until all claims, except those which are the subject of a bona fide dispute and then only to the extent of the amount actually in dispute, have been paid in full[,] or proportionally in cases of a deficiency, is theft by the prime contractor or subcontractor of moneys so misappropriated and is punishable under s. 943.20.

¶ 13. As a threshold matter, we first address whether Angela Keyes was a subcontractor for purposes of WIS. STAT. § 779.02(5) and whether that fact matters

---

[5] Although the statute was amended in 2005, the amendments do not affect our analysis in this case.

in how we resolve this case.[6] The Keyeses argue Angela was a subcontractor providing materials for the Wettstein project, such as cabinetry, flooring, tile and fixtures. The State contends Angela was not a subcontractor, but rather, along with her husband Matt, was a prime contractor for purposes of the theft by contractor statute. We do not, however, need to resolve this dispute. We assume for the sake of discussion that Angela was a subcontractor when she supplied certain materials for the building project. Regardless, whether she was a subcontractor does not change our analysis of whether the Keyeses, as prime contractors, are prohibited by § 779.02(5) from taking profit for those materials prior to the other subcontractors being paid in full for labor and materials or paid proportionately in the event of deficiencies. Thus, we turn to address this issue.

¶ 14. The Keyeses argue that Angela was entitled to her profits for materials and labor because, in their view, that profit falls within the statutorily permissible claims paid to subcontractors for labor and materials. They assert that WIS. STAT. § 779.02(5) is unambiguous and does not preclude a prime contractor acting as a subcontractor from paying itself a profit before paying the other subcontractors in full or proportionately in cases of a deficiency. Stated differently, according to the Keyeses, § 779.02(5) does not create a priority of payment "within a given land improvement project." In their view, § 779.02(5) "only prohibits prime contractors

---

[6] Although the Keyeses have framed the issue in terms of whether a prime contractor can also be a subcontractor, we reframe the issue more accurately as whether Angela Keyes' potential status as a subcontractor exempts her from the fiduciary duty imposed on prime contractors by WIS. STAT. § 779.02(5).

from using the proceeds from one job for any other purpose outside of that job other than improving the land in question." Thus, they argue, "[a]s long as the prime contractor uses the trust funds to pay for labor and materials on the job he does not violate the statute."

¶ 15. The State interprets WIS. STAT. § 779.02(5) differently, arguing that the statute prohibits a prime contractor from paying itself profit on items supplied as a subcontractor before all other subcontractors have been paid for labor and materials in full, or proportionately in cases of a deficiency. The State observes that there is nothing in the statute's language allowing prime contractors acting as subcontractors to take such a profit before labor and material claims were paid, arguing that the legislature would have included such language in the statute if it meant to allow such profit-taking. The State argues that the Keyeses' interpretation of the statute would lead to absurd results inconsistent with the statute's language and its primary purpose, which is to protect third parties who supply labor and materials.

██

¶ 16. We first conclude that, looking at the text of WIS. STAT. § 779.02(5), the statutory interpretations offered by the Keyeses and by the State both appear reasonable. We therefore conclude that the statute is ambiguous[7] in that it does not plainly state whether a

---

[7] We note that, although we conclude WIS. STAT. § 779.02(5) is ambiguous in the context of the facts of this case, in prior decisions the statute has been determined to be unambiguous. *See Capital City Sheet Metal, Inc. v. Voytovich*, 217 Wis. 2d 683, 689, 578 N.W.2d 643 (Ct. App. 1998). Our conclusion that the statute is ambiguous under the present facts does not affect the observation that the statute is unambiguous in the context of those prior decisions. *See Seider v. O'Connell*, 2000 WI 76, ¶ 43,

prime contractor also acting as a subcontractor is subject to the terms of the statute.[8] Thus, we look to case law examining the statute's legislative history and underlying purpose and policies to resolve the ambiguity. We conclude, based on prior case law examining the statute's text, its legislative history, and underlying purpose, that § 779.02(5) precludes a prime contractor who also acts as a subcontractor from paying itself a profit before all other subcontractors have been paid in full for amounts due or to become due and owing for their labor and materials, or paid proportionately where there is a deficiency.

¶ 17. We begin our analysis of WIS. STAT. § 779.02(5) by reviewing how the statute has been

236 Wis. 2d 211, 612 N.W.2d 659. ("Depending on the facts of a case, the same statute may be found ambiguous in one setting and unambiguous in another.").

[8] The concurring opinion states that the rule of lenity should be applied to resolve the ambiguity we conclude exists in WIS. STAT. § 779.02(5). *See* concurrence at ¶ 3. We observe that the Keyeses do not argue that this rule applies. In any event, we conclude that the rule of lenity does not apply here. The rule of lenity is a rule of statutory construction that applies to criminal statutes only when two conditions are met: the penal statute is ambiguous, and we are unable to clarify the legislative intent by resort to legislative history. *See State v. Setagord*, 211 Wis. 2d 397, ¶ 31, 565 N.W.2d 506 (1997) (citations omitted). The second condition is not met here. As we explain, the legislative intent of § 779.02(5) is to protect owners and subcontractors from contractors who neglect to perform their fiduciary duty by failing to pay subcontractors in full or proportionally before paying themselves a profit. *See Kraemer Bros. Inc. v. Pulaski State Bank*, 138 Wis. 2d 395, 402–03, 406 N.W.2d 379 (1987). This legislative intent resolves the ambiguity without the need to resort to the rule of lenity.

interpreted in prior decisions. Section 779.02(5) is part of Wisconsin's construction lien law. *State v. Sobkowiak*, 173 Wis. 2d 327, 333 n.2, 496 N.W.2d 620 (Ct. App. 1992). The statute makes a prime contractor a trustee of funds received from an owner until all subcontractors are paid for their labor and materials put into the improvement for which payment was made. *See id.* at 334 (citation omitted). " '[A]ll moneys paid to a contractor or subcontractor by an owner for improvements . . . constitute a trust fund only in the hands of the contractor or subcontractor for all claims due or owing for labor and materials . . . .' " *Kraemer Bros. Inc. v. Pulaski State Bank*, 138 Wis. 2d 395, 406 n.4, 406 N.W.2d 379 (1987). In other words, § 779.02(5) "imposes a trust on funds the contractor receives from the owner, requiring that those funds be used only for payments 'for labor and materials used' in performing the contract." *Capital City Sheet Metal, Inc. v. Voytovich*, 217 Wis. 2d 683, 689, 578 N.W.2d 643 (Ct. App. 1998) (quoting § 779.02(5)). Use of such funds for any other purpose, whether personal or corporate, violates § 779.02(5). *Id.* Under this statute, the funds paid by an owner to the contractor for improvements upon the owner's premises may "only be used for the payment of claims of the beneficiaries *until all such claims are paid.*" *Sobkowiak*, 173 Wis. 2d at 334 (citation omitted).

¶ 18. With these policies in mind, we conclude that a more reasonable interpretation of Wis. Stat. § 779.02(5) than the one the Keyeses offer is that a prime contractor is prohibited from taking a profit on items supplied as a subcontractor before all other subcontractors have been paid in full for their labor and materials, or proportionately in cases of a deficiency. As we explained, § 779.02(5) creates a trust fund "in the

hands of the prime contractor or subcontractor to the amount of all claims due or to become due or owing from the prime contractor or subcontractor for labor and materials used for the improvements, until all the claims have been paid . . . ." Wis. Stat. § 779.02(5). A prime contractor does not lose its status as a prime contractor for purposes of the theft by contractor statute simply by acting as a subcontractor on parts of a project. Allowing a prime contractor who also acts as a subcontractor to mark up the cost of the materials supplied and to take a profit before all other subcontractors are paid in full for their labor and materials would be inconsistent with the expressed legislative purpose of § 779.02(5), to wit: to protect owners and subcontractors from contractors who neglect to perform their fiduciary duty by failing to pay subcontractors moneys entrusted to them for that purpose. *See, e.g., Wisconsin Dairies Coop. v. Citizens Bank & Trust,* 160 Wis. 2d 758, 768, 467 N.W.2d 124 (1991); *Kraemer Bros. Inc.,* 138 Wis. 2d at 402–03.

¶ 19. As we explained in *Sobkowiak,* prime contractors have no legal ownership over the funds in their trust and no interest in that money other than that of a trustee, until all subcontractors are paid in full or proportionally. *See Sobkowiak,* 173 Wis. 2d at 334. We see no reason to treat a prime contractor acting solely as a prime contractor differently for purposes of Wis. Stat. § 779.02(5) from a prime contractor also acting as a subcontractor in providing labor and materials. The underlying policies and the purpose of § 779.02(5) apply under either scenario.

¶ 20. In this case, neither the circuit court nor the State contest that the Keyeses are entitled to payment for materials and labor expended. For example, the

circuit court allowed the allocation of $30,750 to Matthew for his labor, and the State has not contested that allocation on appeal. We agree. However, the money at issue in this case is money retained by the Keyeses over and above the payments made to the subcontractors for their labor and materials, money which the Keyeses concede was kept as a profit.

¶ 21. The Keyeses argue that Wis. Stat. § 779.02(5) allows them to keep that money because it was contractually authorized money "due or to become due" and, they argue, "[a]s far as the language of the statute is concerned all claims which are 'due or to become due' are created equal." We disagree.

¶ 22. The statute differentiates between claims due or to become due to subcontractors for their labor and materials and money used for any other purpose. The statute plainly prohibits a prime contractor for use of such moneys "for *any* other purpose until *all* claims [for labor and materials] have been paid in full[,] or proportionally in cases of a deficiency . . . ." Wis. Stat. § 779.02(5) (emphasis added). Plainly stated, under § 779.02(5), a contractor may be liable for theft by contractor for using such trust fund moneys for any other purpose other than to pay the subcontractors working on an improvement of property for amounts due or to become due, or proportionally in cases of a deficiency, until all claims are paid. Applying this interpretation of § 779.02(5), in conjunction with the criminal intent provision of Wis. Stat. § 943.20(1)(b), to the present facts, the Keyeses may be held criminally liable because the undisputed evidence indicates that they intentionally used money from the entrusted funds to pay themselves a profit, which plainly is use of moneys for a purpose other than to pay the subcontractors in full or proportionally for labor and materials.

¶ 23. In sum, we conclude that, under WIS. STAT. § 779.02(5), contractors, including those acting as both prime contractor and subcontractor, have a fiduciary duty to pay all subcontractors for their labor and materials in full, or proportionally in cases of a deficiency, before paying themselves a profit. When a prime contractor also acts as a subcontractor, it may pay itself for labor and materials, but cannot pay itself a profit for the materials provided for improvements on an owner's premises until all moneys due and owing or to become due for labor and material are made to other subcontractors, or paid proportionally in cases of a deficiency.

## B. Sufficiency of Evidence

¶ 24. Having concluded that WIS. STAT. § 779.02(5) prohibits contractors from paying themselves profits as subcontractors before all other subcontractors have been paid for labor and materials in full or proportionally, we next address whether the circuit court had sufficient evidence to deny the Keyeses' motion to dismiss their bindover and the information. Under WIS. STAT. § 970.03(7), a defendant is bound over for trial when the court, following a preliminary hearing, finds probable cause to believe that the defendant committed a felony and that a felony was probably committed. The Wisconsin Supreme Court has explained the applicable standard in the following terms:

> The focus of the judge at a preliminary hearing is to ascertain whether the facts and the reasonable inferences drawn therefrom support the conclusion that the defendant probably committed a felony. If inferences must be drawn from undisputed facts, as in this case, only reasonable inferences can be drawn. We stress that a preliminary hearing is not a proper forum to choose between conflicting facts or inferences, or to weigh the

389

state's evidence against evidence favorable to the defendant. That is the role of the trier of fact at trial. If the hearing judge determines after hearing the evidence that a reasonable inference supports the probable cause determination, the judge should bind the defendant over for trial. Simply stated, probable cause at a preliminary hearing is satisfied when there exists a believable or plausible account of the defendant's commission of a felony.

*State v. Dunn*, 121 Wis. 2d 389, 397–98, 359 N.W.2d 151 (1984) (citations omitted).

¶ 25. When we review the sufficiency of the evidence to support a bindover, we apply a narrow standard of review. *State v. Webb*, 160 Wis. 2d 622, 632 n.7, 467 N.W.2d 108 (1991) (citing *State v. Williams*, 104 Wis. 2d 15, 20–21, 310 N.W.2d 601 (1981)). Under that standard, a defendant challenging the sufficiency of the evidence to support bindover "will lose on appeal if there is any substantial evidence to support the preliminary hearing judge's finding of 'probable cause.' " *Id.*

¶ 26. As to the particular crime at issue in this case, the Wisconsin Supreme Court has explained:

The elements of the offense of criminal theft by contractor are: "(1) the defendant acted as a prime contractor; (2) the defendant received money for the improvement of land from the owner or a mortgagee; (3) *the defendant intentionally used the money for purposes other than the payment of bona fide claims for labor or materials prior to the payment of such claims;* (4) the use was without the owner or mortgagee's consent, and contrary to the defendant's authority; (5) the defendant knew the use was without consent and contrary to his authority; and (6) *the defendant used the money with the intent to convert it to his own use or the use of another."*

390

*Tri-Tech Corp. of Am. v. Americomp Servs., Inc.*, 2002 WI 88, ¶ 26, 254 Wis. 2d 418, 646 N.W.2d 822 (citations omitted). Furthermore, to establish that the offense constitutes a Class C felony, the State must show that the value of the misappropriated money exceeds $2,500. WIS. STAT. § 943.20(3)(c). We conclude for the reasons explained below that there was sufficient evidence presented at the preliminary hearing to bind the Keyeses over for felony theft by contractor, party to a crime, in violation of WIS. STAT. §§ 779.02(5), 939.05, and 943.20(1)(b) and (3)(c).

¶ 27. The first two elements of the crime of theft by contractor are not at issue here. Rather, the Keyeses challenge the sufficiency of evidence that they knowingly used the money at issue without the consent of the Wettsteins for purposes other than for paying claims for labor or materials.

¶ 28. Specifically, the Keyeses argue that the testimony at their preliminary hearing did not support bindover. The Keyeses challenge the testimony of accountant Linda Jones as "confused on the facts and the law in believing that Angie Keyes is not entitled to any profit on the materials she supplied to the Wettsteins according to the contract." The Keyeses further argue that the $36,036.28 Angela kept was money that was contractually "due or to become due" to Angela as "profit on the materials provided." Consequently, the Keyeses argue, the preliminary hearing did not establish that (1) the money paid to Angela was for a purpose other than the payment of claims due or to become due for labor and materials; (2) the Wettsteins did not consent to pay $36,038.26; and (3) there was conscious knowledge by the Keyeses that the Wettsteins did not consent to that payment. We reject these arguments.

¶ 29. The Keyeses' first argument hinges on their construction of Wɪs. Sᴛᴀᴛ. § 779.02(5), which we have rejected. The Keyeses admitted that the unaccounted amount of $36,038.26 was money that Angela took as a profit. Thus, in keeping with our construction of § 779.02(5), it can be reasonably inferred from this evidence that these funds were used for a purpose other than to pay the subcontractors for amounts due or to become due for labor and materials.

¶ 30. The Keyeses' second and third arguments somewhat overlap; thus we address them together. The Keyeses assert that the State failed to present any evidence that the Wettsteins did not agree to pay Angela $36,038.26 for the materials she provided as a subcontractor. According to the Keyeses, the Wettsteins consented to Angela receiving these moneys by agreeing to the contract price for these materials. Similarly, the Keyeses argue that there is no evidence that they were aware that the Wettsteins did not consent to paying Angela the $36,038.26 for the materials; the contract governing the construction, which both parties willingly entered into, included these costs. These arguments suffer several fatal flaws.

¶ 31. As with the Keyeses' first argument, their second and third arguments rely on their erroneous construction of Wɪs. Sᴛᴀᴛ. § 779.02(5). First, the Keyeses suggest, without citation to authority, that by including a profit margin for materials provided for the project in the contract, they are relieved from the constraints imposed by § 779.02(5) on paying the subcontractors first before using the funds for their own purposes. It is true there is no reason a contractor may not include a profit in the amounts contracted for labor and materials supplied by the contractor while also acting as a subcontractor. However, it does not logically

follow that, because the Wettsteins agreed by contract to pay the Keyeses a price for material that reflects a built-in profit, they are entitled to retain the profits before paying the subcontractors.

¶ 32. The second problem with the Keyeses' arguments is that they concede that they took the $36,038.26 for profit. We have rejected their argument that this was permissible based on our construction of WIS. STAT. § 779.02(5). The Keyeses do not argue that the statute does not otherwise apply to them as prime contractors. It logically follows, then, that, because we have concluded that the statute does apply to them regardless of whether they were also acting as subcontractors, and because the Keyeses concede they took the money as a profit, there is a reasonable inference that the Keyeses misappropriated the money without the Wettsteins' consent and with the awareness that they did so without consent.

¶ 33. Finally, the Keyeses ignore much of the evidence introduced at the preliminary hearing and the facts reasonably found by the circuit court. The circuit court said the following in support of its bindover decision:

> I am going to find with respect to both of the defendants that there is probable cause to believe that a felony has been committed. That finding is significantly based on the fact that of the accounting of the funds that were paid out . . . by Mr. and Mrs. Keyes with there being a $47,000.00 amount . . . due to subcontractors and an unaccounted for amount of $36,000.00 from the accounting . . . there is an inference that the moneys drawn from the account were not retained in trust and paid as they should.

¶ 34. Furthermore, upon denying the Keyeses' motion to dismiss the bindover, the court explained that

393

the evidence presented during the Keyeses' preliminary hearing supported the reasonable inference that they probably committed a felony. In support of that conclusion, the court considered the following evidence presented at the preliminary hearing: (1) Jones' testimony that she believed that more than $2,500 was diverted to purposes other than the construction of the Wettstein home, and that $36,036.28 could not be accounted for because of a lack of receipts verifying that amount; (2) that mere "proposals" submitted by the Keyeses to justify that amount did not provide sufficient evidence that Jones needed to consider; (3) that the invoices the Keyeses submitted were suspect, reflecting Angela's pattern of "recycling money or generating invoices to match a cashier check so she could say that she was entitled to this money"; and (4) that approximately $47,000 remained unpaid to other subcontractors. From this evidence, the court concluded that, although funds might be due to the Keyeses for services and materials, the evidence at the preliminary hearing raised a reasonable inference that they kept over $36,000 in violation of Wis. Stat. § 779.02(5) while other subcontractors remained proportionally unpaid.

¶ 35. Keeping in mind the legal standard the circuit court must apply in determining the appropriateness of bindover, see Dunn, 121 Wis. 2d at 397–98, we conclude that the circuit court's factual findings are not clearly erroneous and that this evidence supports the court's probable cause findings. Jones' testimony regarding Angela's pattern of "recycling money or generating invoices to match a cashier check so she could say that she was entitled to this money" supports a reasonable inference that the Keyeses were aware that the Wettsteins did not consent to the Keyeses' profit-

keeping without first paying the subcontractors in full or proportionally. In addition, it can be reasonably inferred that the Wettsteins did not consent to the Keyeses paying themselves a profit first before paying the subcontractors for labor and materials because by so consenting, the Wettsteins would unreasonably expose themselves to the subcontractors executing their lien rights.\*

¶ 36. In sum, the record and the Keyeses' own concessions that the $36,036.28 was kept as a profit support a reasonable inference that the Keyeses kept at least $2,500 (i.e., the minimum amount to establish a Class C felony under Wis. Stat. § 943.20(3)(c) (2001–02)) as a profit not authorized by Wis. Stat. § 779.02(5). We therefore conclude that there was sufficient evidence to support the circuit court's bindover decision.

## CONCLUSION

¶ 37. Based on the foregoing reasons, we conclude that the circuit court properly denied the Keyeses' motion to dismiss bindover and the information charging them with theft by contractor, party to a crime, in violation of Wis. Stat. §§ 779.02(5), 939.05, and 943.20(1)(b) and (3)(c). We therefore affirm the circuit court's order denying the Keyeses' motions to dismiss the bindover and information.

*By the Court.*—Orders affirmed.

¶ 38. DYKMAN, J. *(concurring)*. Construction projects are not usually started and finished in a day. Excavators, concrete contractors, installers of rough plumbing, framers and roofers arrive on a job in a rough sequence, finish their work, and expect to get paid, usually in thirty days or so. The majority's inter-

pretation of WIS. STAT. § 779.02(5) (2001–02)[1] makes for chaos and consternation in the construction industry because a contractor who happens to do some work as a subcontractor on a project cannot pay either himself or herself or the other subcontractors until the end of the project. That is not how things work in the real world. Subcontractors are not all treated alike. The excavator expects to be paid before the interior painter, and usually is. There is no difference, in terms of damage, between the concrete subcontractor who is paid his or her total contract price upon completion of his or her work and the contractor who subcontracts the concrete work to himself or herself and is paid for the work. In either instance the owner has gotten his or her money's worth, despite having paid a profit to whichever subcontractor did the work. In both cases, the owner is protected from paying a subcontractor twice. In both cases, the profit necessary to a successful business is paid, along with material costs. Businesses do not work for long without a profit. Yet, the majority distinguishes between a contractor/subcontractor's labor and his or her profit. Section 779.02(5) makes no such distinction. Apparently, a contractor can dig holes, saw wood, pound nails and be paid for doing so without fear of criminal prosecution, but if somehow this appears to be a profit, criminal liability results. And apparently, a contractor can pay for subcontractors' labor and materials but fail to pay for their profit without incurring criminal liability.

¶ 39. The majority requires a new way of doing business for small contractors who subcontract to themselves some of the actual work on a project. Until a contractor is certain of a project's financial success, and

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

the amount or percentage of the amount to pay all contractors, he or she must withhold paying at least a substantial part of each subcontractor's invoice for fear of paying one subcontractor more than another and risking a criminal penalty. Expeditors rather than small contractors will become the business model. A bidding mistake by a small contractor/subcontractor will always result in potential criminal liability if the contractor/ subcontractor makes the profit any other subcontractor would have made. Even if all project money remains in the project. And owners will remain no more or less protected than before.

¶ 40. There is an easier and better way. I believe that owners are at least as well protected under the "trust funds must be used on the job" interpretation as under the State's "no profit until the end" interpretation. Because it is unfair to apply criminal penalties under statutes that are unclear, we interpret penal statutes in favor of the defendant. *See State v. Jackson*, 2004 WI 29, ¶ 41, 270 Wis. 2d 113, 676 N.W.2d 872. "This rule of lenity generally establishes that ambiguous penal statutes should be interpreted in favor of the defendant." *Id.* That is what I would do. Since WIS. STAT. § 779.02(5) is silent as to the criminal liabilities of contractors who also act as subcontractors for a small part of a project, I conclude that contractors are not prohibited from also acting as subcontractors on a project. I also conclude that all subcontractors should be treated alike, at least as far as § 779.02(5) is concerned. Therefore, Matthew Keyes cannot be criminally prosecuted under this statute for subcontracting a part of the Wettstein's project to Angela Keyes, and paying her the subcontract amount after she performed the subcontract.[2]

---

[2] I have separated Angela and Matthew Keyes for clarity. They may both be contractors and subcontractors.

¶ 41. The majority rejects this analysis because it believes that the second condition necessary for the rule of lenity has not been met. The first condition is that the statute is ambiguous. *State v. Setagord*, 211 Wis. 2d 397, 414–15, 565 N.W.2d 506 (1997). The majority and I agree that it is. The second condition is that we are unable to clarify the intent of the legislature by resort to legislative history before we employ the rule of lenity. *Id.*

¶ 42. What history? What intent?

¶ 43. The majority relies on a statement of legislative purpose in *Kraemer Bros., Inc. v. Pulaski State Bank*, 138 Wis. 2d 395, 402–03, 406 N.W.2d 379 (1987). The problem with the majority's reasoning is the purpose the court found in *Kraemer Bros.* is not remotely related to the issue we address today. *Kraemer Bros.* was a dispute between Kraemer Bros., a contractor, and a bank over money Weslow, a subcontractor to Kraemer Bros., had deposited in the bank. *Id.* at 397–99. The money was traceable to money Kraemer Bros. paid to Weslow. *Id.* When Weslow went into receivership, the bank applied the money to Weslow's debt to it, leaving Weslow's suppliers unpaid, but with potential liens against the project which Kraemer Bros. would have to pay. *Id.* Kraemer Bros. argued that it was unfair to make it pay for the supplies twice. *See id.* The bank argued that because Kraemer Bros., and not the owner of the project, had paid the disputed funds to Weslow, the funds were not trust funds. *Id.* at 400. The supreme court disagreed. It concluded that "reading sec. 779.02(5) to require payment directly from the owner to the subcontractor is not reasonable and is contrary to the purpose of the statute." *Id.* at 403.

¶ 44. I have no dispute with the *Kraemer Bros.* analysis. But all that tells me is that a trust fund exists

no matter who furnishes the funds for a construction project, and that this is the legislative purpose of the statute. I find nothing in *Kraemer Bros.* suggesting that prime contractors may not act as subcontractors on their projects. The majority, disclaiming an answer to this issue, does not tell us that they may not. So, we are back to where we came in on this issue: What is the legislative intent as to whether prime contractors may also act as subcontractors?

¶ 45. If, as I believe, contractors may also be subcontractors, what legislative history tells us that prime contractors are allowed to pay other subcontractors their entire bills, including profit, but only their own labor and material bills? Where do we see some evidence of legislative intent to make dual purpose contractors/subcontractors criminals if they pay themselves a penny of profit on their subcontract until all others are paid? Owners who agree to pay a contractor/subcontractor a sum that includes a profit ought not to be able to threaten a criminal prosecution when the contractor/subcontractor does exactly what the subcontract requires and gets paid the agreed-upon price. It may be that if money runs out later in the project, a subcontractor will not get paid because previous subcontractors were paid, but that can happen regardless of whether the contractor is also a subcontractor.

¶ 46. If the majority were really serious about applying WIS. STAT. § 779.02(5) to contractors who also subcontract to themselves, it would not permit a contractor to pay himself, herself or itself a dime until everyone else is paid in full. That is also a possible meaning of the statute, though a draconian one. The meaning the majority discerns is a hybrid which will

399

focus future litigation on a useless issue—how much profit was built into contractors' and subcontractors' contracts.

¶ 47. The lenity approach is by far the better one. The majority tells us that this approach is precluded by legislative intent, but saying that does not make it so. There is no evidence of that intent in the majority opinion, and *Kraemer Bros.*, though it speaks to *a* purpose of Wis. Stat. § 779.02(5), only tells us that the legislature intended any funds received for a project to be trust funds regardless of their source. Neither the legislature nor *Kraemer Bros.* tells us the answer to the question we face here—who can be paid those funds? The majority's conclusion that legislative intent precludes us from employing the lenity doctrine is wishful thinking.

¶ 48. A caveat is necessary here. A contractor/subcontractor's profits must be reasonable. A contractor cannot circumvent Wis. Stat. § 779.02(5) liability by building an unreasonably high profit into his or her subcontract. And that is why I concur. An accountant testified that Angela Keyes made a profit of seventy-five percent on the items she furnished under her subcontract. While that, without more, would not sustain the State's burden of proof at trial, it is enough to show probable cause to support a bindover. *See State v. Dunn,* 121 Wis. 2d 389, 397–98, 359 N.W.2d 151 (1984). What constitutes a reasonable profit depends on the industry or business in which the profit is made or, perhaps, the circumstances of the particular contract. If Angela Keyes marked up the items she furnished the Wettsteins a reasonable amount, she is not guilty of violating Wis. Stat. § 779.02(5). If the mark-up was significantly unreasonable in amount, and was therefore a theft, she can be found guilty.

400

¶ 49. I agree with the majority's conclusion that probable cause existed to support the trial court's bindover decision. But I differ in how I reach this conclusion. I therefore respectfully concur.